UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FULTON DENTAL, LLC**
individually, and on behalf
of all others similarly situated,

    Plaintiff,

v.

**BISCO, INC.**

    Defendant.

CIVIL ACTION NO. 1:15-cv-11038

## CLASS ACTION COMPLAINT

1.  In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy." 47 U.S.C. § 227, Congressional Statement of Findings #5. In enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile, hereinafter "Junk Faxes." 47 U.S.C. § 227. Plaintiff, Fulton Dental, LLC ("Fulton" or "Plaintiff"), is a private dental practice in Birmingham, Alabama, which has been inundated with Junk Faxes. Fulton brings this class action to challenge Defendant Bisco, Inc.'s ("Bisco" or "Defendant") wholesale issuance of Junk Faxes in violation of the TCPA.

### THE PARTIES

2.  The Plaintiff, Fulton Dental, LLC, is a private medical practice in Birmingham, Alabama.

3. The Defendant, Bisco, Inc. is a domestic corporation located at 1100 West Irving Park Road in Schaumburg, Illinois 60193.

## JURISDICTION

4. The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because Defendant resides in this District and a substantial portion of the facts and circumstances that give rise to the cause of action occurred here, as Defendant sent the challenged Junk Faxes from this District.

## THE LEGAL BASIS OF THE CLASS CLAIMS

7. Fulton's claims, and those of the class it seeks to represent, arise under the TCPA.

8. Among other provisions, the TCPA forbids Junk Faxes – sending unsolicited advertisements for goods and services via facsimile. 47 U.S.C. §227(b)(1)(C).

9. The TCPA requires that even fax advertisements being sent to those who consented to their receipt, or with whom the advertiser had an established business relationship, must include an Opt Out Notice. 47 U.S.C. §227(b)(2)(D).

10. In order to comply with the Opt Out Notice requirements, each Junk Fax must include all of the following:

      a) Clear and conspicuous language on the first page of the advertisement;

      b) That states that facsimile recipients may request that the sender not send any future unsolicited advertisements, and which;

      c) Specifically informs facsimile recipients that the failure to comply with such a request, within the shortest reasonable time as determined by the Commission, is unlawful.

      d) The notice must also include **both** a toll free phone and facsimile number that a recipient may use to submit a request to cease transmitting facsimile advertisements to the recipient.

*See* 47 U.S.C. §227(b)(D); 47 CFR 64.1200(a)(3)(iii-v)

11. The failure to include Opt Out Notice on a facsimile advertisement is itself an actionable violation of the TCPA. *See* 47 U.S.C. §227(b)(3) (providing for a private right of action for violations of any of the requirements of 47 U.S.C. §227(b)).

12. Section §227(b)(3) of the TCPA provides a private right of action:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receiver $500 in damages for each violation, whichever is greater, or (C) both such actions.

**FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFF**

13. On July 9, 2015, Bisco sent a fax advertisement to Fulton touting its dental products.

14. A copy of the advertisement is attached as <u>Exhibit A</u>.

15. This facsimile advertises Bisco's goods and services, including products typically used in the dental or endodontic practice.

16. This fax advertisement is a form document that is not addressed to Fulton, or anyone in particular.

17.     The fax advertisement includes a form advertisement inviting recipients to "Buy a product never before purchased, receive <u>10% OFF</u> your <u>TOTAL ORDER!</u>" (emphasis in original).

18.     The fax advertisement was sent by Bisco itself. It indicates the statement, "if you would like to order call: Call at Steve Wolf 1-800-BIS-DENT ext. 6039".

19.     Steve Wolf was a "Territory Sales Manager" at Bisco from March of 2014 through September of 2015, including the dates these faxes were sent. *See* <u>https://www.linkedin.com/in/steve-wolf-a800a478</u> (Last Visited November 17, 2015).

20.     Mr. Wolf's job responsibilities while he was at Bisco included:

   a) Travel nationwide selling and promoting Bisco products and services.
   b) Sell dental adhesives, primers, cements, post and core build up materials, composites, acid etchants, liners, and pulp capping materials
   c) 80 - 100 inbound / outbound calls daily when in office including cold call farming for new business

*Id.*

21.     By sending Junk Faxes to the class, Bisco violated class members' privacy rights. Plaintiff and the putative class members have had their privacy improperly invaded, as the transmissions jammed their facsimile lines from other legitimate business communications.

22.     By sending Junk Faxes to the class, Bisco caused class members to sustain property damage and cost in the form of paper and toner.

23.     Upon information and belief, based upon the absence of the opt out notice, or any other opportunity to request that faxes cease, Bisco will continue to send facsimile messages to plaintiff and the class that violate the TCPA absent an injunction prohibiting such.

24.     Fulton did not consent to receive fax advertisements from Defendant.

4

25. The Fax Advertisement did not contain an Opt Out Notice that complies with the TCPA.

## CLASS ALLEGATIONS

26. Fulton brings this action under Fed. R. Civ. P. 23.

27. Through the transmission of generic fax advertisements promoting its goods and services, including the Junk Fax it sent to Fulton, Defendant has engaged in wholesale violations of the TCPA.

28. Based on the generic style of the fax advertisement, the standard telemarketing reach of a Junk Fax campaign, and the geographic distance between Fulton's office and Defendant's locale, Defendant has likely transmitted Junk Faxes to thousands of recipients throughout the United States.

29. Defendant did not obtain the consent of Junk Fax recipients prior to sending them.

30. To the extent facsimile advertisements were transmitted by Defendant to those who had given consent, or had an established business relationship with it, of which there is no evidence at this time, the Junk Faxes still violate the TCPA, as they did not contain the Opt Out Notice required by law.

31. The class that Fulton seeks to represent two classes.

Unsolicited Advertisement Class: All persons or entities within the United States to whom Defendant sent Junk Faxes promoting Bisco's goods or services at any time within four years prior to the filing of this Complaint through the date of certification in this action.

Opt Out Notice Class: All persons or All persons or entities within the United States to whom Defendant sent Junk Faxes promoting Bisco's goods or services at any time within

four years prior to the filing of this Complaint through the date of certification in this action, which did not contain a reference to the recipient being permitted to opt out of future faxes.

32. Plaintiff is a member of both classes, which are both identifiable through Defendant and its business partners or agents records, and databases used to send the Junk Faxes.

33. There are questions of law and fact common to Fulton and to the proposed class, including but not limited to the following:

   a. Whether Defendant violated the TCPA by engaging in fax advertising;

   b. Whether the facsimiles sent by Defendant to class members constitute unsolicited advertisements; and

   c. Whether Fulton and the members of the class are entitled to statutory damages as a result of Defendant's actions.

34. Fulton's claims are typical of the claims of the class.

35. Fulton is an adequate representative of the class because its interests do not conflict with those of the class, it will fairly and adequately protect the interests of the class, and it is represented by counsel skilled and experienced in class actions.

36. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for the fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

37. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

38. Fulton is capable of representing the members of the class.

## CAUSES OF ACTION
### COUNT I: VIOLATION OF THE TCPA

39. Defendant caused Junk Faxes promoting its goods and services to be sent to Fulton and class members, in violation of the TCPA.

40. By sending Junk Faxes to the class, Bisco violated class members' privacy rights. Plaintiff and the putative class members have had their privacy improperly invaded, as the transmissions jammed their facsimile lines from other legitimate business communications.

41. By sending Junk Faxes to the class, Defendant caused class members to sustain actual property damage and cost in the form of paper and toner.

42. Defendant failed to provide the requisite Opt Out Notice on its Junk Faxes, informing the recipients of their right to cease receiving such advertisements and a cost free mechanism to make such request.

43. Failure to provide Opt Out Notice on a facsimile advertisement is a separate and distinct violation of the TCPA.

44. The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of its terms.

### COUNT II: INJUNCTIVE RELIEF

45. The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

46. Fulton, on behalf of the Class, respectfully petitions the Court to order Defendant to immediately cease engaging in unsolicited facsimile advertising to them in violation of the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE, on behalf of himself and members of the class, Fulton prays for the following relief:

1. That the Court declare that Exhibit A violates the TCPA;

2. That Defendant, its agents, or anyone acting on its behalf, be enjoined from altering, deleting or destroying any documents or records that could be used to identify the class members;

3. That this Court certify the claims of Fulton and all others similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure;

4. That Fulton and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by Defendant and $1,500 for each willful violation;

5. That the Court enter an appropriate order enjoining Defendant, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom Defendant have transmitted unsolicited facsimile advertisements; and

6. That Fulton and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**JURY DEMAND**

Fulton requests a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

J. MATTHEW STEPHENS
**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:(205) 939-0199
Facsimile: (205) 939-0399
mstephens@mmlaw.net
*Subject to Pro Hac Vice*

Edward A. Broderick
Anthony I. Paronich
**BRODERICK LAW, P.C.**
99 High Street, Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*


Matthew P. McCue
**THE LAW OFFICE OF MATTHEW P. MCCUE**
1 South Ave., Third Floor
Natick, MA 01760
Phone: (508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff and Proposed Class*

Dated: <u>December 8, 2015</u>

# Exhibit A

**Buy a product never before purchased, receive 10% OFF your TOTAL Order!***

**July 2015**
**TheraCal LC®**


TheraCal LC®


ALL-BOND UNIVERSAL®


DUO-LINK UNIVERSAL™


CORE-FLO™ DC Lite


eCEMENT®

# TheraCal LC®
**Resin-Modified Calcium Silicate Liner/Pulp Protectant**

Theracal LC's unique apatite stimulating ability is ideal for direct and indirect pulp capping and for use as a liner.

**Calcium Release**
- Hydroxyapatite formation[1,2]

**Healing & Insulation**
- Liner insulates the pulp, providing virtually no post-operative sensitivity[3]
- Alkaline pH promotes healing[1]

**Ease of Use**
- Light curable, flowable-like handling

**Radiopaque**
- Radiopaque properties allow for easy detection on x-rays



## To Order Call:
**Call at STEVE WOLF 1-800-BIS-DENT ext. 6039**

Promo code: 15PQ3. Offer expires 7/31/15.
Discount cannot be combined with any other offers. U.S. customers only. MC-6049QP
* Chemical and post items only.

Rx Only


**BISCO**
www.bisco.com

1. ADA definitions for direct and indirect pulp capping at http://www.ada.org/en/publications/cdt/glossary-of-dental-clinical-and-administrative-ter
2. Apatite-forming Ability of TheraCal Pulp-Capping Material, M.G. GANDOLFI, F. SIBONI, P. TADDEI, E. MODENA, and C. PRATI J Dent Res 90 (Spec Iss A):abstract number 2520, 2011 (www.dentalresearch.org)
3. Selcuk SAVAS, Murat S. BOTSALI, Ebru KUCUKYILMAZ, Tugrul SARI. Evaluation of temperature changes in the pulp chamber during polymerization of light-cured pulp-capping materials by using a VALO LED light curing unit at different curing distances. Dent Mater J. 2014;33(6):764-9.