UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FULTON DENTAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 11038 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BISCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Fulton Dental, LLC filed a class action complaint, alleging that Bisco, Inc. sent it unsolicited fax advertisements in violation of the Telephone Consumer Protection Act.[1] Fulton Dental seeks statutory, injunctive, and declaratory relief for both itself and for members of the proposed class. After Fulton Dental rejected a settlement offer, Bisco filed this motion to deposit $3,600 with the Court under Federal Rule of Civil Procedure 67. Bisco also asked the Court to enter judgment against it in the amount of $3,005 plus any accrued costs, and to enjoin Bisco from sending Fulton Dental any future unsolicited faxes. Bisco's unconditional surrender to Fulton Dental has a purpose: Bisco is trying to moot the case so that the class claims cannot proceed. As this Opinion explains, Fulton Dental could have thwarted Bisco's gambit by filing an early motion for class certification. But it did not. So, for the reasons explained below, Bisco's motion to deposit funds is granted. As a result,

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq. (the TCPA).

Fulton Dental's individual and class claims are both moot, and the case is dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

## I. Background

Fulton Dental is a private dental practice in Birmingham, Alabama. R. 1, Compl. ¶¶ 1-2.[2] It alleges that on July 9, 2015, it received an unwanted fax advertisement from Bisco, an Illinois corporation. *Id.* ¶¶ 3, 13, 24. The fax promoted Bisco's dental products and services, encouraging recipients to "[b]uy a product never before purchased, [and] receive 10% OFF your TOTAL ORDER!" *Id.* ¶¶ 15, 17. It also included contact information for Steve Wolf, a Bisco sales territory manager. *Id.* ¶¶ 18-20. The fax, which was a form document that was not addressed to anyone in particular, did not include an opt-out notice allowing the recipient to request the sender to stop sending faxes. *Id.* ¶¶ 16, 23, 25. Bisco's actions allegedly invaded Fulton Dental's privacy rights and jammed its fax lines so that it could not receive other legitimate faxes. *Id.* ¶ 21. Fulton Dental also claims that it suffered damages in the form of paper and toner costs. *Id.* ¶ 22.

On behalf of itself and members of a proposed class, Fulton Dental alleges that Bisco violated the Telephone Consumer Protection Act (TCPA) in two ways: (1) by sending unwanted junk faxes; and (2) by failing to include an opt-out notice in those faxes. *Id.* ¶¶ 39-44. In that vein, Fulton Dental seeks to represent two classes: an "unsolicited advertisement class" of plaintiffs who received unsolicited faxes from December 8, 2011 (four years before the complaint was filed) to the date of class

---

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

certification, and an "opt out notice class" of all plaintiffs who received, during the same time period, unsolicited faxes that did not contain an opt-out notice. *Id.* ¶ 31. Fulton Dental seeks injunctive relief to prevent Bisco from sending future unsolicited faxes, *id.* ¶¶ 45-46, and from "altering, deleting or destroying any documents or records that could be used to identify the class members," *id.* at 8, ¶¶ 2, 5. Fulton Dental also seeks a declaration that the fax it received violated the TCPA, and statutory damages of up to $500 for each negligent violation or $1,500 for each willful violation of the statute. *Id.* ¶ 4; *id.* at 8, ¶¶ 1, 4; *see also* 47 U.S.C. § 227(b)(3). Although Fulton Dental's "prayer for relief" also seeks class certification, *id.* at 8 ¶ 3, it has not yet filed a motion for class certification—a failure that turns out to be fatal, as discussed later in the Opinion.

On January 18, 2016, a little over a month after Fulton Dental filed its complaint, Bisco made a settlement offer of $3,005 plus costs, which Fulton Dental rejected on January 24. R. 21, Def's Mot. to Deposit Funds ¶ 2. The next day, Bisco moved to deposit $3,600 with this Court under Federal Rule of Civil Procedure 67. *See generally id.* Bisco's position is that this amount exceeds what Fulton Dental could ever hope to recover in this action, because it assumes maximum liability: $3,005 for two willful violations of the TCPA—one for sending an unwanted junk fax, and one for failing to include an opt-out notice (remember, the TCPA imposes $1,500 per willful violation)—and $595 to cover costs. *Id.* ¶ 2. Bisco also asks the Court to enter judgment in Fulton Dental's favor for $3,005, to enjoin Bisco from further activity that violates the TCPA, and to direct Futon to file a bill of costs. *Id.*

¶ 9; R. 24, Def.'s Br. at 6. After Bisco's motion, the Court requested briefing from both parties on the applicability of Rule 67 to this case, and on why depositing the funds with the Court should result in the entry of judgment. R. 23, 1/26/16 Minute Entry. In its brief, Bisco argued that this deposit, if allowed, would moot the entire case. Def.'s Br. at 5.

## II. Legal Standard

### A. Rule 67

Rule 67 provides that "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it." Fed. R. Civ. P. 67(a). Once a court grants a Rule 67 motion, those funds "must be deposited in an interest-bearing account or invested in a court-approved, interest bearing document." Fed. R. Civ. P. 67(b). Generally, "[t]he purpose of Rule 67 is to relieve the depositor of responsibility for a disputed fund while the parties litigate its ownership." *Engineered Med. Sys., Inc. v. Despotis*, 2006 WL 1005024, at *2 (S.D. Ind. Apr. 14, 2006) (allowing plaintiff to deposit royalty payments with the court during dispute about a patent licensing agreement); 12 Charles Alan Wright & Arthur R. Miller, § 2991 (2d ed. 1997) ("The purpose of the deposit is to relieve the depositor of responsibility for a fund in dispute."). For example, Rule 67 can be used in interpleader actions, most commonly when an insurance company deposits an insurance payout with the court, leaving the claimants to argue about who is

4

entitled to the funds. *E.g.*, *The Sportsman's Guide, Inc. v. Havana Nat. Bank*, 2009 WL 4923092, at *3 (C.D. Ill. Dec. 7, 2009) (in interpleader actions, "the holder of the fund may put the money … in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court" (citation and quotations omitted)); *Am. Skandia Life Assur. Corp. v. McCarty*, 2007 WL 3232496, at *1 (C.D. Ill. Nov. 1, 2007) (permitting insurance company to deposit annuity payment under Rule 67, as claimants disputed ownership of the death benefits). Overall, the Court has broad discretion in determining whether to grant a Rule 67 motion. *See Maher Eng'g Co. v. Screwmatics of S. Carolina, Inc.*, 2014 WL 4979167, at *1 (N.D. Ill. Oct. 6, 2014); *Engineered Med. Sys., Inc.*, 2006 WL 1005024, at *2.

### B. Rule 12(b)(1)

Bisco has not explicitly invoked Federal Rule of Civil Procedure 12(b)(1), but it argues that if it is allowed to deposit $3,600 under Rule 67, then Fulton Dental's individual and class claims would both be moot, leaving the Court with no live case or controversy. Def.'s Br. at 5. A moot case, in turn, would require a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction.

When evaluating a dismissal for lack of jurisdiction under Rule 12(b)(1), a court initially must accept all well-pled allegations as true and draw reasonable inferences in the plaintiff's favor. *Ezekiel v Michel,* 66 F.3d 894, 897 (7th. Cir. 1995) (citation omitted). But the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

5

issue." *Id.* (quotations omitted) (quoting *Capital Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). Mootness is evaluated under Rule 12(b)(1) because it involves constitutional limits on the jurisdiction of federal courts. U.S. Const. art. III, § 2. Article III authorizes jurisdiction only over a live case or controversy, and demands that the parties maintain a personal stake in the case "through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations and quotations omitted). A case becomes moot, then, when the plaintiff no longer "suffer[s], or [is no longer] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citation and quotations omitted). And when there is nothing left to litigate, a dismissal is appropriate under Rule 12(b)(1) because the plaintiff "has no remaining stake" in the case. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (citation and quotations omitted).

## III. Analysis

This case presents several tough questions. First, does Rule 67 permit Bisco to deposit the proposed $3,600 with the Court? If so, do these funds afford full relief to Fulton Dental such that it no longer has a personal stake in the litigation, rendering its individual TCPA claims moot? And if Fulton Dental's individual claims are moot, are the class action claims moot as well? The Court addresses each question below and answers each with a "yes."

6

## A. Rule 67

Bisco seeks permission to deposit $3,600 with this Court under Rule 67. According to Bisco, this sum represents the maximum amount of damages and fees that Fulton Dental could possibly recover for its TCPA claims. Bisco's motivation is no secret: it wants to moot Fulton Dental's individual and class claims. *See generally* Def.'s Br.

There is very little Seventh Circuit authority on the infrequently litigated Rule 67. In general, it is used "to relieve the depositor of responsibility for a disputed fund while the parties litigate its ownership." *Engineered Med. Sys., Inc.*, 2006 WL 1005024, at *2. As mentioned above, Rule 67 is commonly used in interpleader actions, when "the holder of the fund may put the money … in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *The Sportsman's Guide, Inc.*, 2009 WL 4923092, at *3 (citation and quotations omitted). For example, an insurance company can deposit an insurance payout with the court, leaving the claimants to litigate over the priority and ownership of those benefits. *See McCarty*, 2007 WL 3232496, at *1 (permitting insurance company to deposit annuity payments under Rule 67 until dispute over entitlement to funds was resolved). Few standards govern the court's discretion to grant Rule 67 deposits, but courts generally agree that the deposited funds must truly be in dispute. *See United States v. Jupiter Aluminum Corp.*, 2010 WL 1881453, at *2 (N.D. Ind. May 10, 2010) (defendant could not deposit penalties with the court, rather than directly pay the

plaintiff, because the district court had already determined the amount and validity of the penalties on two prior occasions); *Suraleb, Inc. v. Prod. Ass'n "Minsk Tractor Works," Republic of Belarus*, 2007 WL 551568, at *2-3 (N.D. Ill. Feb. 20, 2007) (Rule 67 did not allow a party to deposit funds ordered by an arbitration award, because there was no real dispute over the funds, as the arbitrator had already entered judgment and determined the funds' legal ownership). This requirement seems to restrain courts from unnecessary intervention when there is no actual dispute between the parties. *See Surelab*, 2007 WL 551568, at *2 (N.D. Ill. Feb. 20, 2007) (court should not "supervise the transfer of … assets" when there is no dispute about their ownership).

Rule 67 can also be "useful in cases of … tender of an undisputed sum." 12 Charles Alan Wright & Arthur R. Miller, § 2991. ("Undisputed" in this sense refers not to the funds' legal status, but to their amount.) Courts have used Rule 67 in cases like this one, where a defendant wished to hand over money to satisfy the plaintiff's claim. For example, in *Brause,* an early case interpreting Rule 67, an insurance company tendered $5,000 to the plaintiffs, who sued for that amount in building losses under an insurance policy. *Brause v. Travelers Fire Ins Co*, 19 F.R.D. 231, 233 (S.D.N.Y. 1956). Even though the plaintiffs refused this tender, the court permitted the deposit, concluding that "[t]here does not appear to be any reason why this motion should not be granted." *Id.* at 235. Rule 67 permits tenders and deposits even when the defendant does not admit liability or disclaim all of its interests in the money; the rule was modified in 1983 to allow for "situations in

which a litigant may wish to be relieved of responsibility for a sum or thing, but continue[s] to claim an interest in all or part of it." Fed. R. Civ. P. 67 advisory committee's notes to 1983 amendment. The amendments responded to earlier cases that misconstrued Rule 67 by "permit[ting] deposit only when the party making it claims no interest in the fund or thing deposited." *Id.*  In one of these earlier cases, the defendant was not permitted to deposit disputed rents in an action about the validity of a sublease, because the defendant "still clings to its affirmative defenses which are directly relevant to the issue of whether there is in fact an obligation to pay." *Blasin-Stern v. Beech-Nut Life Savers Corp.*, 429 F. Supp. 533, 535 (D. P.R. 1975). In another, the court did not allow the defendant to deposit money allegedly owed in a contract dispute with plaintiff, when "[d]efendant is not seeking to rid itself of responsibility for a sum of money which it concededly owes to someone. Defendant's difficulty stems from its reluctance to commit itself as to whether it owes the money at all." *Dinkins v. General Aniline & Film Corp.*, 214 F. Supp. 281 (S.D.N.Y. 1963). The 1983 amendments clarified that Rule 67 deposits should be allowed in situations like *Blasin-Stern* and *Dinkins*, where a defendant wishes to tender money to satisfy a plaintiff's claim despite maintaining that she does not legally owe the sum.

Ultimately, "[u]nder the plain language of Rule 67, the circumstances in which a party might be allowed to deposit money with the court are quite broad." *Engineered Med. Sys., Inc.*, 2006 WL 1005024, at *3; *see also Kansas City S. Ry. Co. v. Borrowman*, 2009 WL 3188305, at *4 (C.D. Ill. Sept. 30, 2009) ("Whether to grant

9

leave for such a deposit is solely within the Court's discretion." (citations omitted)). In deciding a Rule 67 motion, courts may also consider "whether the amount sought to be deposited was definite; whether the funds could be deposited all at once or whether there would be repeated deposits that would impose an undue burden on the clerk of court; and whether the party seeking leave to deposit the funds had demonstrated a likelihood of success on the merits." *Borrowman*, 2009 WL 3188305, at *4 (citations omitted). For example, deposits that "could involve a substantial sum of money and could entail an ongoing series of deposits" may be rejected because they would "impose an unnecessary burden upon the clerk of the court." *Design Ben. Plans, Inc. v. Enright*, 940 F. Supp. 200, 207 (N.D. Ill. 1996).

In this case, Bisco seeks to deposit $3,600 with the Court: $3,005 to cover the maximum amount of damages allowed by the TCPA, and $595 for potential costs. The Court holds that Rule 67 permits this deposit. First, the deposit fits within the plain language of the rule, which allows deposits of "all or part of the money or thing" if "any part of the relief sought is a money judgment or the disposition of a sum of money." Fed. R. Civ. P. 67(a). And in this TCPA action, part of Fulton Dental's desired relief is money in the form of statutory damages. Compl. ¶¶ 39-44. In addition, Bisco's tender is consistent with *Brause* and Rule 67's 1983 amendments, which allow for "situations in which a litigant may wish to be relieved of responsibility for a sum or thing, but continue[s] to claim an interest in all or part of it." Fed. R. Civ. P. 67 advisory committee's notes to 1983 amendment. As the amendments show, a deposit is permissible even though Bisco has not admitted

liability under the TCPA or conceded that Fulton Dental is legally entitled to these funds. *Id.*; *see also Engineered Med. Sys., Inc.*, 2006 WL 1005024, at *3 (allowing a Rule 67 deposit "as long as the money is truly in dispute").

The discretionary factors in this case also point towards permitting the deposit. For one, "the amount sought to be deposited [is] definite"—$3,600. *Borrowman*, 2009 WL 3188305, at *4. And there is no dispute that this sum, which includes $3,005 for statutory damages and $595 for costs, provides more than Fulton Dental's maximum statutory recovery for its individual claims. Individuals who sue under the TCPA, which regulates solicitations by telephones and other automated equipment, can obtain (1) an injunction; (2) the amount of actual loss or $500 in statutory damages, whichever is greater; or (3) both. 47 U.S.C. § 227(b)(3). The actual loss, or $500, whichever is greater, can be tripled if there is a willful violation of the statute. *Id.* Fulton Dental alleges receiving only one unsolicited fax. Compl. ¶¶ 13-25. It also alleges that Bisco violated the TCPA twice, at the most— once for sending this unsolicited fax, and another time for failing to include opt-out information in this fax. *Id.* Because Fulton Dental does not allege that it lost more than $500 in paper and toner costs for receiving *one* junk fax, and instead pursues statutory damages, it would recover $500 for each negligent violation (instead of actual damages). 47 U.S.C. § 227(b)(3)(B). And even assuming that Bisco acted willfully, the most Fulton Dental could actually recover is $1,500 for each violation, for a maximum total of $3,000. *Id.* § 227(b)(3)(C). So the amount sought to be deposited—$3,600—is not only definite, but undisputedly covers all of Fulton

Dental's statutory damages. Finally, as to the other discretionary factors, this is not a case where there would be repeated deposits that would unduly burden the clerk's office. *C.f.*, *Design Ben. Plans, Inc.*, 940 F. Supp. at 207 (denying plaintiff's motion to deposit disputed funds because the amount and number of deposits was unclear, and could exceed over four million dollars).

Fulton Dental's primary objection to this deposit is that Rule 67 is a "procedural device" that cannot be used to transform the parties' substantive rights. R. 25, Pl.'s Resp. at 4-6 (citing *Maher Eng'g*, 2014 WL 4979167, at *1 ("[I]t is well-settled that Rule 67 … shall not abridge, enlarge or modify any substantive right[.]" (quoting *LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992)) (quotations omitted)). Although the parties' briefs leave much to be desired on this issue (and most others as well), the crux of this argument seems to be that a deposit should not be permitted if it results in substantive consequences—such as mootness—on the plaintiff. The limited authority on Rule 67, however, shows the opposite: a deposit is permissible even if it results in substantive effects on the parties. For example, courts have held that a Rule 67 deposit can stop the running of prejudgment interest (or some other form of interest on a principal-liability amount). *E.g. Lich v. Cornhusker Cas. Co.*, 774 F. Supp. 1216, 1223 n.5 (D. Neb. 1991) (defendant's deposit stopped the running of prejudgment interest where the defendant had conceded liability on a bond and deposited the face value of the bond into the court's registry); *see also Maher Eng'g*, 2014 WL 4979167, at *2 (noting that "[i]t is true that a few courts have allowed Rule 67 deposits to stop the running of

12

interest under certain circumstances" (citing cases));[3] 12 Charles Alan Wright & Arthur R. Miller, § 2991 ("Under some circumstances it may suffice to stop the running of interest." (citing cases)). In fact, the 1983 amendments to Rule 67 were made in direct response to earlier cases like *Blasin-Stern*, which held that "[n]othing in [Rule 67] provides for the stopping of interest accrual upon deposit in court." 429 F. Supp. at 534; Fed. R. Civ. P. 67 advisory committee's notes to 1983 amendment. The amendments thus clarified that the stopping of interest accrual— an action that has a substantive effect on the parties' claims and defenses—was a permissible use of Rule 67.

Similarly, in other cases, a Rule 67 deposit was deemed to satisfy a litigant's legal obligations. For example, in *Borrowman*, the district court for the Central District of Illinois held that the plaintiffs' deposit of disputed tax payments put them in compliance with their tax obligations so that the plaintiffs "will have fulfilled their respective obligations to the [state tax commissioners] until this matter is resolved." *Borrowman*. 2009 WL 3188305, at *6. The court cited to *Gulf States Utilities*, a Fifth Circuit case where the plaintiff challenged its electricity contract but was permitted to avoid breach by depositing payments under Rule 67. *Id.* at *4 (citing *Gulf States Util. Co. v. Alabama Power Co.*, 824 F.2d 1465, 1475

---

[3]To be sure, *Maher Engineering* also held that the defendant could not deposit sales commissions (the subject of the dispute in that case) under Rule 67 because this "would alter the system [of punitive damages that] Illinois has created to punish and deter undesirable conduct toward sales representatives." *Maher Eng'g*, 2014 WL 4979167, at *2. It was not clear why a deposit would affect the plaintiff's ability to recover punitive damages under the Illinois Sales Representative Act. In any event, as noted above, the court did acknowledge that Rule 67 may be used "to stop the running of interest under certain circumstances." *Id.* at *2.

(5th Cir.), *amended on other grounds*, 831 F.2d 557 (5th Cir. 1987)). The appellate court held that there was "no reason to force [the plaintiff]" to withhold money and be in breach during the pendency of the lawsuit. *Gulf States Util. Co.*, 824 F.2d at 1475; *but see Engineered Med. Sys., Inc. v. Despotis*, 2007 WL 1021866, at *7 (S.D. Ind. Mar. 30, 2007) (plaintiff was in breach because it did not pay royalties to defendant, even when it deposited royalties with the court during the pendency of litigation). The approach taken by *Borrowman* and *Gulf States* is consistent with the 1983 amendments, which allow the depositing party to "be relieved of responsibility for a sum or thing, [while] continu[ing] to claim an interest in all or part of it." Fed. R. Civ. P. 67 advisory committee's notes to 1983 amendment. As noted earlier, these amendments were enacted in response to cases like *Dinkins*, which previously suggested that Rule 67 was limited to interpleader actions. *Dinkins*, 214 F. Supp. at 283. In *Dinkins*, the plaintiff sued for tortious interference of contract, and the defendant counterclaimed for breach of contract. *Id.* at 282. The court held that the defendant could not deposit the money it allegedly owed to the plaintiff under the contract, because Rule 67 could not be used "to preserve all [of] [defendant's] rights under the contract and to avoid the risk of a breach of contract on its part if its position should turn out to be wrong." *Id.* at 283. In response, the 1983 amendments clarified that this interpretation was too limited; Rule 67 is not restricted to interpleader actions, and it can be used even when legal consequences may flow from the deposit—like avoiding breach of contract during litigation. Thus,

14

the Court must reject Fulton Dental's argument that, simply because the deposit may have mootness consequences, Rule 67 categorically prohibits Bisco's deposit.

In a similar vein, Fulton Dental argues that allowing the deposit would affect its substantive right to litigate this case as a class action. Pl.'s Resp. at 5. In other words, if the deposit is allowed, and the case becomes moot, then Fulton Dental would be denied the opportunity to pursue class certification and obtain class-wide relief. *Id.* Fulton Dental bases its argument on one Supreme Court statement in *Campbell-Ewald* that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016); Pl.'s Resp. at 2. To evaluate the impact of this statement (or lack of it) on the issue at hand, it is necessary to understand *Campbell-Ewald*. In that case, the Supreme Court held that an unaccepted or lapsed settlement offer under Rule 68 cannot moot a named plaintiff's individual claims, and thus the rejected offer did not prevent him from pursuing either his individual or class claims. *Id.* The Court relied on the plain language of Rule 68, which states that after fourteen days, "[a]n unaccepted offer is considered withdrawn," Fed. R. Civ. P. 68(b), leaving the parties back in their original positions, *Campbell-Ewald*, 136 S. Ct. at 660. Similarly, "basic principles of contract law" instructed that a "Rule 68 offer of judgment, once rejected, had no continuing efficacy." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1533 (2013) (Kagan, J., dissenting)). So the plaintiff still had a live claim:

"with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Id.* at 671.

Although Fulton Dental frames its argument—that it cannot be denied the right to litigate a class action—on the dictates of Rule 67 itself, Fulton Dental is really making an anti-mootness argument: that a defendant's tender of relief, when deposited with the court, should not moot her individual or class claims. Fulton Dental's citation to *Campbell-Ewald*—that "a would-be class representative with a *live claim of her own* must be accorded a fair opportunity to show that certification is warranted," *id.* at 672 (emphasis added)—begs the question: does a deposit of a full tender of relief leave Fulton Dental with a live claim of its own? Are Fulton Dental's individual and class claims moot? The Court addresses these issues in the next section, which discusses mootness, *see infra* Sections III.B-III.C, because the arguments do not go to the narrower question of whether *Rule 67* permits Bisco to deposit funds with the court in the first place.

Before turning to mootness, the Court acknowledges the wide disagreement on the applicability of Rule 67 to proposed class actions like this one. On the one hand, some courts agree that Rule 67 permits the court to deposit tenders from the defendant to the plaintiff. *E.g.*, *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, 2016 WL 1441791 (D. Mass. Apr. 12, 2016), *motion to certify appeal denied*, 2016 WL 3064054 (D. Mass. May 31, 2016) (permitting defendant to deposit funds with the court and entering judgment in plaintiff's favor, which mooted the plaintiff's individual claims); *Leyse v. Lifetime Entm't Servs., LLC*, 2016 WL 1253607

16

(S.D.N.Y. Mar. 17, 2016) (same). Other courts, however, have denied Rule 67 motions based on disapproval of the defendant's motivations to settle with the named plaintiffs, moot the case, and avoid class litigation. *E.g.*, *Brady v. Basic Research, L.L.C.*, 312 F.R.D. 304, 306 (E.D.N.Y. 2016) (denying Rule 67 motion because "Defendants[] seek … to deposit funds into court to moot this case [and] not to relieve themselves of the burden of administering an asset," and because of "the Supreme Court's directive that 'a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted'" (citations and quotations omitted)); *Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.*, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016) (allowing Rule 67 deposit "would essentially [give Defendant] control of the putative class action," but "[t]he law does not countenance the use of individual offers to thwart class litigation, because the class-action device is designed to allow similarly situated plaintiffs to aggregate smaller claims, promoting judicial efficiency" (citations and quotations omitted)); *Tegtmeier v. PJ Iowa, L.C.*, — F. Supp. 3d. —, 2016 WL 3265711, at *10 (S.D. Iowa May 18, 2016) ("[t]hough the Court *may* allow such a deposit," it ultimately declined to do so because "[the Eighth Circuit] has disapproved of efforts to 'pick off' individual plaintiffs in an effort to thwart class certification" (citations omitted)); *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, — F. Supp. 3d —, 2016 WL 1388730, at *4 (E.D. Mich. Apr. 6, 2016) ("Top Flite is improperly using Fed. R. Civ. P. 67 to moot Plaintiffs' standing to continue the appeal of the denial of class certification," but "Rule 67 may not be used to effect a

legal transfer of property between litigants."); *Bais Yaakov of Spring Valley v. Varitronics, LLC*, 2016 WL 806703, at *1 (D. Minn. Mar. 1, 2016) ("As there is no purpose to the deposit … other than to moot the case, and as Plaintiff has not yet had a fair opportunity to show that class certification is warranted … the motion should be [denied].").

The Court, however, declines to apply a categorical bar under Rule 67. First, Rule 67's text does not mention a defendant's litigation motivations as a relevant consideration. So without any case-law authority, the Court cannot hold that Rule 67 draws the line at defendants in a proposed class action who wish to tender relief to a named plaintiff. Indeed, as discussed earlier, the 1983 amendments to Rule 67 suggest that deposits are permitted *even if* they have substantive effects on the parties' legal positions. All that is needed for a Rule 67 deposit is that "any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing." Fed. R. Civ. P. 67(a). That requirement is met here. Other factors also favor allowing the deposit because the proposed sum is definite, in dispute, and would not create an undue burden. So Bisco's motion to deposit $3,600 with the Court is granted.

### B. Are Fulton Dental's Individual Claims Moot?

Having decided that Rule 67 permits Bisco to make this deposit, the Court next analyzes the consequences of the deposit on (1) Fulton Dental's *individual* claims; and (2) Fulton Dental's *class* claims. The Court begins with whether the deposit moots Fulton Dental's individual claims.

The mootness requirement comes from Article III of the Constitution, which limits federal-court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. There are two "aspects" of mootness: "(1) whether the issues presented are still 'live,' and (2) whether the parties have a legally cognizable interest in the outcome ('personal stake')." *Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). In a class action, the first aspect requires a "live" issue between the class (or the proposed class) and the defendants. *Id.* For example, "[e]vidence that the issues are 'live' may be found from the attempted intervention by unnamed class members" or from the "certification of a class." *Id.* (citations omitted). The second element requires "the named plaintiffs [to] show a personal stake in the outcome of the controversy" so that there exists a "dispute which touch[es] the legal relations of parties having adverse legal interests." *Id.* (citations and quotations omitted). This personal-stake requirement "serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." *Geraghty*, 445 U.S. at 397. In that way, mootness is like "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (citations and quotations omitted).

## 1. Effect of Tender and Deposit

When discussing whether Fulton Dental's *individual* claims are mooted, the pertinent question is whether Fulton Dental still has a live claim against Bisco and

a personal stake in the litigation after receiving full relief through the Rule 67 deposit.

Two recent Supreme Court cases provide some context. In *Genesis Healthcare*, the plaintiff brought a collective action under the Fair Labor Standards Act[4] for uncompensated work. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). After answering the complaint, and before anyone had opted into the collective action, the defendants made the plaintiff a settlement offer under Rule 68 for unpaid wages, fees, and costs; the plaintiff did not respond. *Id.* The defendants then argued that the plaintiff's case was moot because they offered her complete relief. *Id.* The Supreme Court "assume[d], without deciding, that [defendants'] Rule 68 offer mooted respondent's individual claim," and moved on to the next question: whether the collective action "is justiciable when the lone plaintiff's individual claim becomes moot." *Id.* at 1529. The Supreme Court concluded that "[i]n the absence of any claimant's opting in, [plaintiff's] suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action. While the FLSA authorizes an aggrieved employee to bring [a collective] action … the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* In dissent,

---

[4]The FLSA collective action is "similar to, but distinct from the typical class action brought pursuant to Fed. R. Civ. P. 23. The princip[al] difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010); 29 U.S.C. § 216(b). *Genesis Healthcare* also cautioned that "there are significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b)." 133 S. Ct. at 1528 n.1.

Justice Kagan said that the majority's "assumption" was incorrect: "an unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Id.* at 1533 (Kagan, J., dissenting).

A few years later, *Campbell-Ewald* decided the question left unanswered in *Genesis Healthcare*: whether an unaccepted, expired Rule 68 offer moots an individual's claims. *Campbell-Ewald*, 136 S. Ct. at 670. The majority said no, adopting the reasoning of Justice Kagan's *Genesis Healthcare* dissent. *Id.* The majority in *Campbell-Ewald* relied on the plain language of Rule 68, which states that after fourteen days, "[a]n unaccepted offer is considered withdrawn," Fed. R. Civ. P. 68(b), leaving the parties back in their original positions, *Campbell-Ewald*, 136 S. Ct. at 670. Similarly, "basic principles of contract law" instructed that an "offer of judgment, once rejected, had no continuing efficacy." *Id.* (citing *Genesis Healthcare*, 133 S. Ct. at 1533 (Kagan, J., dissenting)). So the plaintiff still had an Article III interest: "with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Id.* at 670-71. In so deciding, the Supreme Court added that "[it] need not, and do[es] not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount. That question

21

is appropriately reserved for a case in which it is not hypothetical." *Id.* at 672. The concurrence and dissent hinted that this situation would produce a different result. *See id.* at 675-76 (Thomas, J., concurring) (differentiating between a "mere offer" and a common-law tender "accompanied by actually produc[ing] the sum at the time of tender in an unconditional manner" (citations and quotations omitted)); *Id.* at 680 (Alito, J., dissenting) ("[T]o the extent there is a question whether Campbell is willing and able to pay, there is an easy answer: have the firm deposit a certified check with the trial court."); *Id.* at 684 (Roberts, C.J., dissenting) ("The most straightforward way is simply to pay over the money. The defendant might hand the plaintiff a certified check or deposit the requisite funds in a bank account in the plaintiff's name. … Alternatively, a defendant might deposit the money with the district court … on the condition that the money be released to the plaintiff when the court dismisses the case as moot." (citations omitted)).

Bisco, along with other class-action defendants, is now testing that hypothetical in *Campbell-Ewald.* Some courts agree that a tender of full relief in the form of a Rule 67 deposit moots the individual's claims, because the "Defendant has already fallen on its sword in unconditional surrender … ." *S. Orange Chiropractic Ctr.*, 2016 WL 1441791, at *4-5 ("I conclude that this named plaintiff no longer has the requisite 'live claim' because Defendant has offered to deposit a check with the court, to satisfy all of Plaintiff's individual claims (and more), and to have the district court enter judgment in Plaintiff's favor."); *Leyse,* 2016 WL 1253607, at *2 ("[A] defendant's deposit of a full settlement with the court, and consent to entry of

judgment against it, will eliminate the live controversy before a court." (citations omitted)). The concept of tender comes from state common law; in Illinois, "courts routinely have held that [t]ender is an unconditional offer of payment consisting of the actual production of a sum not less than the amount due on a particular obligation." *Telemark Dev. Grp., Inc. v. Mengelt*, 313 F.3d 972, 978 (7th Cir. 2002) (quoting *Brown & Kerr, Inc. v. American Stores Prop., Inc.*, 715 N.E.2d 804, 812 (Ill. App. Ct. 1999)) (quotations omitted). So there is a difference between a tender—"an unconditional offer and an actual production of the money to be paid"—and a Rule 68 "*offer* to tender payment *in the future*." *Id.* (emphases added) (because plaintiff "did not actually produce the money to satisfy its obligation under the note" by sending "cash, a check or otherwise transfer[ring] funds," there was no tender); *see also Campbell-Ewald*, 136 S. Ct. at 675 (Thomas, J., concurring) (a Rule 68 settlement offer is unlike a tender because the latter is actually "accompanied by actually produc[ing] the sum at the time of tender in an unconditional manner"). In other words, "a tender is … an irrevocable transfer of title to funds from the defendant to the plaintiff made without regard to the outcome of the lawsuit and without requiring any reciprocal action by the plaintiff." Brief for the American Federation of Labor and Congress of Industrial Organizations as Amicus Curiae Supporting Respondents at 3, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2013).

Here, Bisco is not simply making an *offer* for future relief—it is actually attempting to hand over funds now and asking for judgment to be entered against it, in the form of both monetary and injunctive relief. *See* Def's Mot. to Deposit

Funds. This unconditional surrender backed by immediate action means that Bisco "has thus thrown in the towel [so] there is nothing left for the district court to do except enter judgment." *Leyse*, 2016 WL 1253607, at *2 (citation and quotations omitted). And it does not matter that Fulton Dental has not consented to the deposit (nor does Fulton Dental argue that consent is relevant), just as it does not matter whether a plaintiff consents to judgment being entered in its favor. Indeed, the *Genesis Healthcare* dissent (remember, *Campbell-Ewald* adopted the overall reasoning of that dissent) acknowledged that "a court has discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory." *Genesis Healthcare*, 133 S. Ct. at 1536 (Kagan, J., dissenting). Bisco has unconditionally surrendered on Fulton Dental's individual claims, so those claims are no longer live.[5]

## 2. Complete Relief

Fulton Dental responds that the Court should not enter judgment for it because Bisco has not offered all the relief requested in the complaint—namely, Bisco continues to deny liability and its offer for an injunction has expired. Pl.'s Resp. at 7-9, 14. It is true that judgment should be entered for the plaintiff,

---

[5]Some courts believe that there is no difference between a Rule 68 offer and an immediate tender under Rule 67. *E.g.*, *Ung v. Universal Acceptance Corp.*, 2016 WL 3136858, at *5 (D. Minn. June 3, 2016) ("[I]n this Court's view there is no principled difference between a plaintiff rejecting a tender of payment and an offer of payment[.]"). But *Campbell-Ewald* expressly declined to extend its holding to cases involving a direct tender or a deposit of funds with the court. *Campbell-Ewald*, 136 S. Ct. at 672. *Campbell-Ewald* was also based in large part on the text of Rule 68, in which an "unaccepted offer is considered withdrawn." *Id.* at 670 (citing Fed. R. Civ. P. 68(a)-(b)). So *Campbell-Ewald* did not extend the Rule 68 analysis to Rule 67.

resulting in mooted claims, "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party," *Campbell-Ewald*, 136 S. Ct. at 669 (citation and quotations omitted), so the Court will address each one of these arguments. (Fulton Dental also argues that Bisco's offer does not include class certification, incentive awards, or the ability to shift fees, Pl.'s Resp. at 10-14, but the Court discusses these factors in the next section about Fulton Dental's personal stake in the class claims. *See infra* Section III.C.)

On monetary damages, the Court previously explained that Bisco's proposed $3,600 deposit provides more than Fulton Dental's maximum statutory recovery for its individual TCPA claims ($3,000). *See supra* Section III.A. Fulton Dental does not deny this; instead, it argues that Bisco's tender is insufficient because it has requested declaratory relief that Bisco's fax violated the TCPA, Compl. at 8, ¶ 1, and because "Bisco has not elected to admit liability; an essential element to common-law tender offers," Pl.'s Resp. at 6 (quoting *Campbell-Ewald*, 132 S. Ct. at 675 ("A tender of the amount due was deemed an admission of a liability on the cause of action to which the tender related, so any would-be defendant who tried to deny liability could not effectuate a tender." (Thomas, J., dissenting) (citation and quotations omitted)). But the Seventh Circuit has held that when a plaintiff has received full monetary (or injunctive) relief, the desire to obtain additional *declaratory* relief, without more, does not provide a strong enough personal stake in the Article III sense to allow the plaintiff to keep litigating. In *Chathas*, for example, the plaintiffs sued a union under the Taft-Hartley Act, moving for a

preliminary injunction to stop the union from soliciting certain contributions. *Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508 (7th Cir. 2000). Shortly after, the defendants made a Rule 68 offer that the preliminary injunction against it be made permanent, expressly noting that the offer was *not* an admission of liability. *Id.* at 511. The plaintiffs rejected the offer, but the court held that the plaintiff's claims were moot. *Id.* Although *Campbell-Ewald* abrogated this specific part of the holding—namely, that an unaccepted Rule 68 offer could moot a claim— the Seventh Circuit's analysis of what constitutes complete relief in the Article III sense is still relevant and binding on this Court (of course, the Seventh Circuit is free to overturn its own precedent). When the plaintiffs appealed the district court's dismissal, arguing that they were entitled to declaratory relief or to a finding of liability, the Seventh Circuit explained that there was no basis for the appeal: "A winning party cannot appeal merely because the court that gave him his victory did not say things that he would have liked to hear, such as that his opponent is a lawbreaker. Adverse dicta are not appealable rulings." *Id.* at 512 (citations omitted). In other words, the failure to receive declaratory relief "can cause harm, but not the sort of harm that the courts, in an effort to limit litigation, deem to create a genuine controversy within the meaning of Article III of the Constitution." *Id.* The Seventh Circuit analogized to a plaintiff who receives a default judgment; that plaintiff could not "force his opponent to confess to having violated the law, as it is always open to a defendant to default and suffer judgment to be entered against him without his admitting anything—if he wants, without even appearing in the case." *Id.* (citation

26

omitted). Because the union offered a permanent injunction, it "thus thr[ew] in the towel [so] there is nothing left for the district court to do except enter judgment." *Id.* Thus, "[t]he absence of a controversy in the constitutional sense precludes the court from issuing an opinion on whether the defendant actually violated the law. Such an opinion would be merely an advisory opinion, having no tangible, demonstrable consequence, and is prohibited." *Id.* (citing *Alliance To End Repression v. City of Chicago*, 820 F.2d 873, 875-76 (7th Cir. 1987)). Similarly, in *Holstein*, the plaintiff's complaint sought declaratory relief that Chicago's towing procedures were unconstitutional. *Holstein*, 29 F.3d at 1147. When the city offered him full monetary damages by refunding his towing fees, the plaintiff had no remaining stake in the litigation; despite the lack of declaratory relief, "[he] may not spurn this offer of all the damages he is owed and proceed to trial." *Id.* (citation omitted). *See also Campbell-Ewald*, 136 S. Ct. at 682, n.3 (Roberts, C.J., dissenting) ("Our precedents … plainly establish that an admission of liability is not required for a case to be moot under Article III."); *Leyse*, 2016 WL 1253607, at *2 ("A plaintiff has no entitlement to an admission of liability, as a party can always incur a default judgment and liability without any factual findings."). Thus, Fulton Dental need not receive an admission of liability or declaratory relief because its receipt of full monetary and injunctive relief deprives it of a personal stake to continue litigation and eliminates a controversy before this Court.

Next, Fulton Dental argues that Bisco's tender does not provide complete relief because "[its] offer to enter into an injunction came as part of Bisco's Rule 68

'offer of judgment,' which was issued on January 18, 2016, and expired on February 1, 2016." Pl.'s Resp. at 14. As the Court previously explained, there is a difference between a defendant's Rule 68 offer of judgment and a tender coupled with unconditional, immediate action. *See supra* Section III.B.1. Here, Bisco is asking the Court to enter an immediate injunction against it. Def.'s Br. at 6. This is different from a Rule 68 offer because Bisco is essentially saying that it has *already stopped* the offending behavior. It would be splitting hairs to argue that Bisco is offering to stop violating the TCPA as soon as the deposit is allowed, but not before then. So this situation can be analogized to voluntary-cessation cases, where a plaintiff's injunctive-relief claim is mooted by the defendant's change of behavior. It is true that "a defendant seeking dismissal based on its voluntary change of practice or policy must clear a high bar." *Ciarpaglini v. Norwood*, 817 F.3d 541, 545 (7th Cir. 2016). Otherwise, it would be easy for defendants to temporarily stop the offending practice, win a dismissal on mootness, and then just start back up again. *Id.* So a party asserting mootness by voluntary cessation must "ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citations omitted). Here, no one reasonably expects that Bisco will send more unsolicited faxes to Fulton Dental. Bisco has backed up its tender with unconditional and immediate action and asks the Court to deposit $3,600 and enter judgment against it. And unlike voluntary-cessation cases, where there is a concern that defendants will resume their behavior, here, there will actually be a court order requiring Bisco to stop sending improper faxes to Fulton Dental. There is no

28

reason to think that Bisco would ignore an enforceable injunction order, especially when Bisco is the one asking for it. Nor would compliance with the injunction be difficult or impractical, as Bisco has allegedly sent only one junk fax to Fulton Dental in the past. Compl. ¶¶ 13-25.

In sum, Fulton Dental will have no remaining personal stake in the litigation after receiving maximum statutory damages, injunctive relief, costs, and judgment in its favor. After the funds are deposited, the Court will enter judgment for Fulton Dental in the amount of $3,005 plus costs, with an order for Bisco to cease sending Fulton Dental faxes that violate the TCPA. Fulton Dental is directed to file a bill of costs pursuant to Rule 54.

## C. Are Fulton Dental's Class Claims Moot?

The remaining question is whether the class action remains live now that Fulton Dental's individual claims are moot. It does not automatically follow that class action claims are moot when the named plaintiff's individual claims are moot. In some situations, a plaintiff whose individual claims are moot might still have a sufficient personal stake in the *class* claims to move forward with them. Or the class claims might continue because there remains a live dispute between the proposed class and the defendants; so even if the named plaintiff no longer retains a personal stake in the class claims, a different plaintiff can intervene to represent the class. The case law reveals two situations where the mooting of the named plaintiff's individual claims does not moot the class claims: (1) when a class has been certified (or when the plaintiff has filed a motion for class certification); and (2) when the

claims are inherently transitory or capable of repetition. In the first category of exceptions, mootness of the class claims turns on *when* the individual claims were mooted—in particular, whether a class has been certified or, at the least, a motion for class certification has been filed.[6] The procedural stage of the litigation affects whether the plaintiff has developed a personal stake in the class claims, and whether the proposed class has developed a live claim against the defendant. The second class of exceptions is more concerned with the *substance* of the claims, and protects claims that are so vulnerable to mootness that they might never be litigated to completion without the benefit of an exception. The Court will discuss each type of exception next. Ultimately, however, none of these exceptions apply to Fulton Dental.

### 1. Class Certification Exception to Mootness

The Supreme Court has long held that when a named plaintiff's claim becomes moot before class certification, the class action is not necessarily moot. In *Sosna v. Iowa*, the plaintiff argued that an Iowa law, which required one year of state residency before seeking a divorce, was unconstitutional. *Sosna v. Iowa*, 419 U.S. 393, 395 (1975). After the class was certified, she had satisfied the one-year

---

[6]It is worth noting that a named plaintiff's personal "stake" in the Article III sense is distinct from whether she qualifies as an adequate representative for the class under *Rule 23*. In other words, a named plaintiff whose individual claims are moot might continue to satisfy Article III requirements so that she can continue litigating her class claims, but she might not be able to "fairly and adequately protect the interests of the class" under Fed. R. Civ. P. 23(a)(4). *C.f. Sosna*, 419 U.S. at 403 (that plaintiff faced "real and immediate" harm for Article III purposes "does not automatically establish that [she] is entitled to litigate the interests of the class she seeks to represent" under Rule 23); *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978) (although plaintiffs' class claims could proceed despite mooting of their individual claims, the court "express[ed] no opinion[] as to the named plaintiffs' ability to fairly and adequately represent the class").

residency requirement, so her individual claim was moot. *Id.* at 398. In deciding that the class claims could proceed, the Supreme Court established the principle that "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the plaintiff]." *Id.* at 399. Certification "has important consequences for the unnamed members of the class," such as the ability to bind class members to a judgment on the merits. *Id.* at 399 n.8. As such, there was "[a live] controversy … between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Id.* at 402. The plaintiff also had a sufficient personal stake in the class litigation because she faced a "real and immediate" threat of harm at the time the class was certified. *Id.* at 403.

A few years later, in *Parole Commission v. Geraghty*, the plaintiff brought a proposed class action challenging the Parole Commission's release guidelines, but he was released from prison while his appeal from the denial of class certification was pending. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 390 (1980). The Supreme Court explained that there was still a live case despite the plaintiff's release and despite the denial of class certification in the district court, because the potential class members still wanted to challenge the parole guidelines, as "demonstrated by the fact that prisoners currently affected by the guidelines have moved to be substituted, or to intervene, as 'named' respondents in this Court." *Id.* at 396. So *Sosna* and *Geraghty* together suggest that at the moment of a class

31

certification decision—whether a grant or denial—the class members have a live interest against defendant. *Id.* As for the personal stake requirement—that is, the named plaintiff's ability to pursue the class claims despite being released from prison—the Supreme Court explained that "the purpose of the 'personal stake' requirement is to assure that" there are "self-interested parties vigorously advocating opposing positions" in front of the court. *Id.* at 403 (citations omitted). And the named plaintiff could still pursue the appeal on behalf of the class because he "continues vigorously to advocate his right to have a class certified," and that was "sufficient to assure that Art. III values are not undermined." *Id.* at 404.

There is another Supreme Court case that allowed a mooted named plaintiff to continue litigating the class's claims after the denial of a motion to certify the class. *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980). *Roper* involved a class action against a bank for imposing certain service charges. After the district court denied class certification, the bank tendered full recovery to each named plaintiff; over the plaintiffs' objections, the district court allowed the bank to deposit funds with the court and entered judgment for the plaintiffs. *Id.* at 329-30. Although the plaintiffs' individual claims were moot, the Supreme Court held that the plaintiffs could continue representing the class in the appeal of the class-certification denial because they had a personal stake in the appeal—namely, "a continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id.* at 336.

So in *Sosna*, *Geraghty*, and *Roper*, the Supreme Court thrice held that after there has been a decision on class certification—whether a grant or denial of it—the mooting of the class representative's claims will *not* necessarily moot the class claims. The dispute over class certification was enough to create (1) a live dispute between the class members and the defendants; and (2) a personal stake in the litigation by the named plaintiff such that she could continue pursuing the class claims. So the decision on class certification represented a key temporal line that changed the parties' legal status and interests. The Supreme Court has not, however, addressed the "[d]ifficult questions [that] arise as to what, if any, are the named plaintiffs' responsibilities to the putative class *prior* to certification." *Roper*, 445 U.S. at 340 n.12. Indeed, many circuits have since grappled with the proper approach when a named plaintiff's claim is live at the filing of the complaint but becomes moot before class certification is decided. Federal courts have generally followed three approaches in this scenario, holding that the class claims are (1) moot;[7] (2) not moot if there has been a motion for class certification;[8] or (3) not moot even if there has been no motion for class certification, so long as the named plaintiff has not unduly delayed filing one (in this last category, courts are more

---

[7] *See, e.g.*, *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("[A] putative class action … ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." (citations omitted)); *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot. … In contrast, class certification will preserve an otherwise moot claim." (citation omitted)).

[8] *See, e.g.*, *Fontenot v. McCraw*, 777 F.3d 741, 750 (5th Cir. 2015) (as long as there has been a motion for class certification, "a court order granting or denying class certification, and therefore resolving the separate status of the class, is unnecessary to maintaining a live class action suit despite the mootness of the named plaintiff's case" (citation omitted)).

resistant to mooting the class claims when there is evidence of "picking off" named plaintiffs).[9]

The Seventh Circuit appears to follow the second approach, that is, the filing of the class certification motion is enough to keep the class claims alive. In other words, "the mooting of the named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action so long as the case has been certified as a class action … or … so long as a motion for class certification has been made and not ruled on." *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003) (citations omitted). The Seventh Circuit focused on this procedural stage—the filing of the motion for class certification—in *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978), which was decided three years after *Sosna*. There, after the Seventh Circuit affirmed the denial of class certification, *Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977), the defendants tendered full relief to the named plaintiffs, *Susman*, 587 F.2d at 868. Normally, the mooting of the named plaintiff's individual claims at this stage would also moot the class claims, because the appeal was over. *Susman*, 587 F.2d at 869;

---

[9]*See, e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011) (the mooting of plaintiff's individual claim "before [he] files a motion for class certification … does not moot a class action. If the named plaintiff can still file a timely motion for class certification, the named plaintiff may continue to represent the class until the district court decides the class certification issue"); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011) ("a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification" even when his claims were mooted before filing for class certification); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004), *abrogated on other grounds* by *Campbell-Ewald*, 136 S. Ct. 663 ("[a]bsent undue delay in filing a motion for class certification," class action complaint need not be dismissed when individual claims are mooted before the filing of class certification); *id.* at 345 (allowing defendants to "pick off" plaintiffs would frustrate the purposes of class actions and "Congress's explicit directive that the FDCPA be enforced by private attorney generals acting in a representative capacity").

34

*see also Geraghty*, 445 U.S. at 404 (although the named plaintiff had a personal stake in appealing the denial of class certification, "[i]f, on appeal, it is determined that class certification properly was denied, the claim on the merits must be dismissed as moot"). But after the Seventh Circuit affirmed the denial of class certification, and *before* the defendants tendered relief, the named plaintiffs hired new attorneys and made renewed motions for class certification. *Susman*, 587 F.2d at 868. The court explained "that when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages." *Id.* at 870. Thus, "the motion for certification, while pending … sufficiently, though provisionally, bring[s] the interests of class members before the court so that the apparent conflict between their interests and those of the defendant will avoid a mootness artificially created by the defendant by making the named plaintiff whole." *Id.* at 869. In so holding, the Seventh Circuit relied on other cases that "have consistently recognized that unnamed class members have an interest in a lawsuit even before a Rule 23 determination is made that a class action may be maintained on their behalf." *Id.* For example, potential class members can weigh in on class certification or challenge the named plaintiff's adequacy of representation, *id.* (citation omitted), and the Supreme Court's *American Pipe* doctrine tolls the statute of limitations for a putative class member's claims when the class action complaint is filed, *id.* (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)). Potential class members "may also

have a right to be informed of, or even included in, a settlement that occurs prior to class certification." *Id.* (citation omitted). These examples showed that "at least in a limited sense, the interests of the unnamed class members are before the court during the pendency of a motion for class certification." *Id.* (emphasis added).

*Susman* focuses on the existence of a live claim between the proposed class and the defendants when a class-certification motion has been filed; other cases also suggest that the named plaintiff retains a personal stake in the class claims only after there has been a motion for class certification. For example, in *Damasco*, the Seventh Circuit considered the consequences of a defendant's attempt to pick off named plaintiffs and extinguish a class action. *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). There, the TCPA defendants made a Rule 68 offer of complete relief to the plaintiff, who refused the offer and then moved for class certification; the court held that this offer mooted the plaintiff's individual claims. *Id.* at 893. In a later case called *Chapman*, the Seventh Circuit anticipated *Campbell-Ewald* and overruled this part of *Damasco's* holding, namely, that a Rule 68 settlement offer mooted a plaintiff's claims. *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015). But *Chapman* did not overrule *Damasco* and other Rule 68 cases as to what happens to class action claims when the named plaintiff's individual claims become moot. *Id.* As to this issue, *Damasco* decided that "[t]o allow a case, not certified as a class action and with *no motion for class certification even pending*, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in

Article III." *Damasco*, 662 F.3d at 896 (emphasis added) (citations omitted). So whatever the reason for individual mootness—whether a tender of complete relief, the defendant's voluntary cessation, the passage of time, or the changing of a statutory regime—*Damasco* suggested that the plaintiff no longer has a stake in the class claims, so those claims are moot, when there has been no motion for class certification. *Id.*

The Seventh Circuit also came to this conclusion in *Damasco* despite consistent disapproval of defendants' attempts to avoid class litigation by mooting the plaintiff's individual claims. *See Espenscheid*, 688 F.3d 872, 874 (7th Cir. 2012) (acknowledging that there are "case[s] in which a defendant manufactures mootness in order to prevent a class action from going forward, as by making an offer of judgment that exceeds any plausible estimate of the harm to the named plaintiffs and so extinguishes their stake in the litigation"); *Primax Recoveries*, 324 F.3d at 547 (mooting class claims when plaintiff has filed motion for class action would allow the "defendant [to] delay the action indefinitely by paying off each class representative in succession"); *Susman*, 587 F.2d at 870 ("If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate."). *Damasco* also acknowledged that picking off of plaintiffs could still occur *before* the motion for class certification has

been filed, but it ultimately did not want to "forge a new rule that runs afoul of Article III." *Damasco*, 662 F.3d at 895. Instead, the court offered "[a] simple solution to the buy-off problem … : Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." *Id.* In so deciding, the Seventh Circuit disagreed with other circuits that "have fashioned a new rule, that, absent undue delay, a plaintiff may move to certify a class and avoid mootness even after [his individual claims are moot]." *Id.* at 895-96 (citing, e.g., *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004)).[10] Since *Damasco*, many class action plaintiffs have heeded the Seventh Circuit's advice and filed "prophylactic" motions for class certification early in the litigation. *E.g.*, *Smith v. Specified Credit Ass'n, Inc.*, 2015 WL 468871, at *3 (N.D. Ill. Jan. 30, 2015), *reconsideration denied*, 2015 WL 1590415 (N.D. Ill. Apr. 8, 2015) ("Before any motion to certify a class has been filed, the plaintiff whose individual demand has been satisfied has no continuing stake in the case; were it

---

[10]Some circuits alternatively recognize a picking-off exception to mootness, which turns on the defendant's litigation conduct. *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1148 (9th Cir. 2016) (defendant's deposit of full relief before motion for class certification was filed did not moot class claims, because "Article III mootness should not provide a vehicle for 'picking off' named plaintiffs or eliminating class treatment of claims until there has been a reasonable opportunity to present the issue of class certification to the court" (citation and quotations omitted)); *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. May 23, 2016) (when a "defendant is on notice that the named plaintiff wishes to proceed as a class," she should not be able to "strategically seek to avoid that possibility").

otherwise, the prophylactic motion suggested in *Damasco* would have been unnecessary.").

Because the Seventh Circuit has drawn the line at the *filing* of class-certification motions, and because it has explicitly declined to make any mootness exception for a defendant's picking-off conduct, Fulton Dental's class claims are moot because it failed to file a motion for class certification before its individual claims became moot—indeed, Fulton Dental has *never* filed such a motion in this case. When there is no pending motion for class certification, there is no live claim between the proposed class members and the defendant, nor does the named plaintiff have a personal stake to vigorously advocate for the class claims. So there appears to be no basis for allowing Fulton Dental's class claims to continue.

The Court notes that there is room to debate whether it makes sense to draw the mootness line at the *filing* of a motion for class certification. The filing of the motion seems to prioritize form over substance, because the solution to picking off—filing a protective motion for class certification along with the complaint—does not serve any real litigation purpose. Plaintiffs generally do not file, and courts cannot decide, class certification motions at the time of the complaint's filing because there has been no discovery on the Rule 23 requirements. Similarly, in other contexts, courts typically do not require parties to move for relief before the issues are ready to decide. (In fact, such motions might even warrant Rule 11 sanctions.) Nor does Rule 23 require an immediate filing of a motion for class certification. So when a plaintiff files a protective motion for class certification early in the litigation, the

39

only purpose of which is to thwart potential picking off, the court will generally have to continue the motion pending discovery. It is strange that mootness hinges on whether the plaintiff has filed a boilerplate motion that serves no actual litigation purpose. As another district court put it, "[i]t would make little sense to fashion a rule that would allow the fate of a case to be resolved by a race to the courthouse. … Such an arbitrary result would serve no purpose other than providing defendants a procedural advantage or requiring plaintiffs in every class action to accompany their complaint with a motion for class certification." *Wilder Chiropractic, Inc. v. Pizza Hut of S. Wis., Inc.*, 754 F. Supp. 2d 1009, 1015 (W.D. Wis. 2010).

What's more, there is no real difference in the named plaintiff's personal stake in the litigation, or the existence of a live claim between proposed class members and defendants, on the day before the class-certification motion is filed compared to the day after. In both instances, no decision on class certification has been made, nor is the motion even ready to be presented. In fact, it makes more sense that an interest in class litigation already exists at the filing of the class action *complaint*. *Susman* cited several examples where class members have an interest in class litigation even *before* the class-certification motion is filed, such as the tolling of their individual claims (which begins at the time the class action complaint is filed) or the right to be a part of a class-wide settlement. 587 F.2d at 869 (citations omitted); *see also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011) (concluding that "[a] nascent interest attaches to

40

the proposed class upon the filing of a class complaint," and that there is "no authority on which to distinguish the case in which a class certification motion is pending or filed … any Article III interest a class may or may not have in a case is or is not present from its inception"). This approach would not conflict with *Sosna*, *Geraghty*, *Roper*, and their progeny; yes, those cases focused on the point in time when class certification had been decided, but they did *not* hold that the class certification decision was the *earliest* stage at which the proposed class or named plaintiffs had an interest in the class claims. The Supreme Court has also consistently described Article III "[j]usticiability [as] … not a legal concept with a fixed content or susceptible of scientific verification" but rather "one of uncertain and shifting contours." *Flast v. Cohen*, 392 U.S. 83, 95, 97 (1968) (citation and quotations omitted). Mootness has a "flexible character," and deciding whether there is "a sharply presented issue in a concrete and vigorously argued case … must be decided on [the] [] facts" of each case." *Geraghty*, 445 U.S. at 400, 405 n.11 (citations and quotations omitted); *Sosna*, 419 U.S. at 402 n.11 (in "cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion … whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case"). So it makes sense that the specific procedural stage of the certification process should not necessarily be dispositive of the mootness question.

In any event, circuit precedent is clear that the *filing* of the motion for class certification is the key procedural step on which mootness of the class claims turns: when a plaintiff's individual claims are moot *before* the motion's filing, the proposed class members do not have a live claim against the defendants, nor does the named plaintiff have a personal stake in maintaining the class claims. *Damasco* also gave plaintiffs a clear, easy solution to ward against picking off: file a protective motion for class certification early. Because the Court must follow this precedent, the class claims are dismissed because Fulton Dental has not filed a motion for class certification.

Finally, Fulton Dental argues that it should continue to represent the class, whose claims should proceed, because it has an interest in fee-shifting and incentive awards. Pl.'s Resp. at 12-14. It is true that both of those interests could be enough to establish a named plaintiff's personal stake in the class claims even when its individual class claims are moot. But the same problem remains: those interests do not exist before there has been a motion for class certification. In *Roper*, the Supreme Court allowed the plaintiffs to pursue an appeal of the denial of class certification, even after receiving complete relief and having judgment entered in their favor. 445 U.S. at 336-37. The named plaintiffs' continued personal stake in the class controversy was "their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id.* at 349. But *Roper* did not purport to extend this interest to all points of the litigation, explaining that it was not reaching the "[d]ifficult questions … as to what, if any,

42

are the named plaintiffs' responsibilities to the putative class prior to certification[.]" *Id.* at 340 n.12. Similarly, the Seventh Circuit has suggested that an incentive award can establish a named plaintiff's continued personal stake in the litigation, but—again—not before a motion for class certification has been filed. *Espenscheid*, 688 F.3d at 874. For example, in *Espenscheid*, after the district court denied certification of a FLSA collective action, the defendants settled with the named plaintiffs. *Id.* When those plaintiffs appealed the denial, the defendants argued that the appeal had to be dismissed because the plaintiffs no longer had a live interest in the case. *Id.* Explaining that the justiciability analysis was the same for FLSA collective actions and Rule 23 class actions, *id.* at 877, the Seventh Circuit concluded that "the prospect of such a[n] [incentive award] payment, though probabilistic rather than certain, suffices to confer standing" to pursue the appeal. *Id.* at 875. Focusing on the importance of timing with regards to this interest, the court noted that "[w]ithout certification there is no class for a plaintiff to represent, and so he cannot hope to obtain an incentive award; he has accomplished nothing for the class and his own claim has been satisfied as the result of a voluntary negotiation." *Id.* On the other hand, "if he is permitted to appeal the denial of class certification and prevails and on remand remains the class representative despite having settled his individual claim, he can look forward to eventually receiving an incentive award." *Id.* So again, Fulton Dental does not yet have a financial interest in receiving an incentive award sufficient to stave off class mootness, because there has been no motion for, much less a decision on, class certification.

## 2. Substantive Exceptions to Mootness

For the sake of completeness, the Court will also address other exceptions that allow class claims to proceed when a plaintiff's individual claims become moot, even though the parties did not raise these arguments. These exceptions focus on the substance of the plaintiff's claims, and include claims that are either inherently transitory or capable of repetition. Neither exception applies to Fulton Dental.

### i. Inherently Transitory

The idea behind the inherently transitory exception is explained in *Sosna*. After deciding that the class claims were still justiciable after the plaintiff's individual claim became moot after certification, *Sosna*, 419 U.S. at 403, the Supreme Court recognized that "[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion," *id.* at 402 n.11. In these cases, the certification decision could relate back to the filing of the complaint; in other words, the court would proceed as if class certification had been decided at the time of the complaint's filing, so the named plaintiff's individual claim would not be considered moot until *after* class certification had been decided. *Id.* Since *Sosna*, the Supreme Court has "held that the relation-back doctrine may apply in Rule 23 cases where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest

44

expires." *Genesis Healthcare*, 133 S. Ct. at 1530-31 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)) (quotations omitted).

In *Gerstein*, for example, the plaintiffs filed a proposed class action challenging the constitutionality of Florida's pretrial detention procedures. *Gerstein v. Pugh*, 420 U.S. 103, 105 (1975). Before addressing the merits of the claims, the Supreme Court noted that the district court record did not show whether any of the named plaintiffs were still in custody when the class had been certified. *Id.* at 110 n.11. Although "[s]uch a showing ordinarily would be required to avoid mootness under *Sosna*[,] … this case is a suitable exception to that requirement." *Id.* (citations omitted). Because the length of pretrial custody was unpredictable due to "release …[,] dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial[,] [i]t is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Id.* The Seventh Circuit applied these principles in a similar case. In *Olson*, the named plaintiff also asserted constitutional violations during his time in a temporary detention center while awaiting trial. *Olson v. Brown*, 594 F.3d 577, 579 (7th Cir. 2010). Olson moved for certification at the same time he filed his complaint, but was transferred to a different facility shortly after. *Id.* The court applied the inherently transitory exception, which prevents class mootness when "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the

complaint." *Id.* at 582 (citing, e.g., *Gerstein*, 420 U.S. at 110 n.11). As to the first requirement, "the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory." *Id.* And the second factor was also met because the fifty-three affidavits filed in the case showed the "pervasive nature of these claims." *Id.* at 584.

The inherently transitory exception does not apply here because "[t]his controversy is not one of those … situations, such as a pregnancy or an election campaign, that will run its course faster than courts can usually act to provide complete review on the merits." *Ciarpaglini*, 817 F.3d at 547 (citations omitted). The purpose of the exception is to allow an opportunity to decide claims that are fleetingly live. But that is not the situation here—Fulton Dental does not meet either of the two *Olson* requirements; for one, there is nothing inherent to TCPA claims that make them unlikely to survive the duration of ordinary litigation. Unlike pretrial detention, which can end at any point, a past statutory violation of the TCPA cannot be mooted by the mere passage of the time. Nor is there any suggestion of an ongoing class of people suffering from a stream of unwanted Bisco faxes. So Fulton Dental cannot benefit from this exception.

### ii. Capable of Repetition

Another mootness exception applies to claims that are capable of repetition, but evading review. When "the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that

plaintiff[,] the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake." *Geraghty*, 445 U.S. at 398 (citations omitted). Because "the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue." *Id.* For this exception to apply, a plaintiff "must have a reasonable expectation of being subjected to the offending behavior in the future." *Olson*, 594 F.3d at 583. While the inherently transitory exception involves a constant class of plaintiffs *other than* the named plaintiff who suffers from the offending conduct, this exception involves a "claim [that] is capable of repetition *as to the named plaintiff*." *Id.* (emphasis added). But the named plaintiff must face more than a possibility of similar conduct in the future; "[t]he Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test for capable of repetition, yet evading review." *Jones v. Sullivan*, 938 F.2d 801, 806-07 (7th Cir. 1991) (citation and quotations omitted) (after agency fixed problem of attributing someone else's income to the plaintiff's social security number, "plaintiffs, having received the SSN relief they requested, are not likely to become involved in the same controversy in the future"). So the capable-of-repetition exception does not apply here, because it is only speculative that Fulton Dental, who has received one junk fax, will continue to receive them from Bisco in the future.[11]

_____

[11]Although the Seventh Circuit has not clarified whether the inherently transitory and capable of repetition exceptions apply only when there has a decision on class certification, the procedural posture would seem to matter less to these exceptions because it is the substantive nature of the *claims* that matter. These exceptions deal with the "problem … when the claim at issue is so inherently transitory that individual plaintiffs

## IV. Conclusion

For the reasons explained above, Bisco's Motion to Deposit Funds with the Court, R. 21, is granted, and the $3,600 must be deposited with the Clerk's Office, along with a notice of deposit (to be filed on the electronic docket). Bisco shall deposit the funds by September 7, 2016. After the funds are deposited, the Court will order the funds to be released to Fulton Dental in accordance with Rule 67(b) (explaining that deposits and withdrawals must accord with 28 U.S.C. § 2042, which in turn provides that "[a]ny claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him"). As a result of the deposit, Fulton Dental's individual and class claims will be moot, and the entire case will be dismissed under Rule 12(b)(1). After the deposit is made, judgment shall also be entered for Fulton Dental in the amount of $3,005, along with an injunction against Bisco to refrain from using any device to send an unsolicited facsimile advertisement to Fulton Dental, in violation of the Telephone Consumer

---

cannot even expect to maintain it long enough to obtain a decision on, or even file a motion for, class certification." Newberg on Class Actions § 2:13 (5th ed.) (2016).

Protection Act, 47 U.S.C. § 227(b). Fulton Dental is directed to file a Rule 54(d) bill of costs with the Court by September 14, 2016; the costs will be paid out of the remainder of the deposit.[12]


ENTERED:


                    s/Edmond E. Chang
                    Honorable Edmond E. Chang
                    United States District Judge

DATE: September 2, 2016

---

[12]Because the Court has concluded that both the individual and class claims are moot, the Court need not consider Bisco's additional arguments of estoppel and waiver. *See* Def.'s Br. at 9-10.