IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FULTON DENTAL, LLC** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BISCO, INC.**<br><br>Defendant. | Case No. 1:15-cv-11038<br><br><br><br><br><br>Hon. Judge Edmond E. Chang<br>Hon. Mag. Judge Daniel Martin |

**PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES, COSTS, AND CLASS REPRESENTATIVE AWARD**

On November 9, 2017, this Court preliminarily approved a proposed class action settlement between Plaintiff Fulton Dental, LLC ("Fulton Dental") and Defendant Bisco, Inc. ("Bisco"). Dkt. No. 64. The Settlement requires Defendant to pay $262,500 into a common fund for the benefit of 25,127 class members whom Bisco faxed in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Class Counsel have zealously prosecuted Plaintiff's claims for over two years, achieving the Settlement only after successfully appealing an earlier judgment entered in this action, thorough class and merits discovery, and extended, arm's-length negotiations.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees equal to one-third of the Settlement Fund, or $87,500, as well as reimbursement of $2,115.40 in costs and an incentive award of $5,000 to the Class Representative. If the Settlement is approved as requested and the claims rate remains at 15% as expected, claimants will each receive approximately $30.

I.      **BACKGROUND AND SETTLEMENT**

Fulton Dental filed this action against Bisco on December 8, 2015, alleging that Bisco violated the Telephone Consumer Protection Act by sending unsolicited facsimile advertisements that did not contain a required opt-out notice to Plaintiff and others. *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4). Bisco filed its answer on January 12, 2016, and on January 25, 2016, in an effort to moot the case, it made an individual Fed. R. Civ. P. 68 offer of judgment to Plaintiff and moved to deposit such funds with the Court, requesting that judgment be granted in Plaintiff's favor on an individual basis, only. Dkt. Nos. 17, 21. Plaintiff rejected the offer, and Class Counsel briefed an opposition to this attempt by Bisco to force a "pick off" of the named plaintiff in order to avoid class-wide liability. Dkt. No. 25.

After the Court granted Bisco's motion to deposit funds and entered judgment in Plaintiff's favor on an individual basis, Class Counsel filed a timely notice of appeal on September 29, 2016, Dkt. Nos. 36, 38-41, and engaged Public Citizen to argue the appeal. The parties thereafter engaged in appellate briefing and argument before the Seventh Circuit. *See Fulton Dental, LLC v. Bisco, Inc.*, No. 16-3574 (7th Cir.) (Dkt. Nos. 11-14, 17-18, 23-24). Plaintiff's efforts were successful: On June 20, 2017, the Seventh Circuit reversed the judgment and remanded for further proceedings; its opinion clarified the effect of unaccepted offers of judgment in this Circuit in light of the Supreme Court's holding in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), holding that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *See Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 546 (7th Cir. 2017) (reaffirming, post-*Campbell-Ewald*, that "as long as the proposed class representative has not lost on the merits before a class certification motion is filed, it is not barred from seeking class treatment"). It is because of this case that courts in this Circuit are no

2

longer inundated with perfunctory class certification motions filed with the complaint in order to stave off named plaintiff "pick-off" attempts by defendants looking for a procedural loophole around class-wide liability.[1]

After these proceedings were remanded to this Court, the parties proceeded into extensive class and merits discovery, including Bisco's production of records of the faxes it sent during the class period as well as documents to support Bisco's assertion that the facsimile advertisements were sent with the permission of the recipients. Burke Decl. ¶ 14. The parties also began to discuss the possibility of a class-wide settlement, and through the ensuing months, counsel for the parties engaged in arm's-length negotiations, which ultimately led to the proposed Settlement now before the Court. Burke Decl. ¶ 14. These negotiations were informed by Class Counsel's thorough investigation and discovery into Plaintiff and the class' claims. Burke Decl. ¶ 14.

The Settlement requires Bisco to fund a non-reversionary, cash Settlement Fund of $262,500 for the benefit of a Settlement Class consisting of the 25,127 recipients to whom Bisco's fax log indicates it sent a facsimile between December 8, 2011 and December 8, 2015. Dkt. No. 60-1 ("Agr.") at p. 2 ¶ 4, p. 4 ¶ 4.a. Each Settlement Class Member who submits a simple claim form online, by facsimile, or by mail will receive a cash payment. Agr. at p. 5 ¶ 4.c; Dkt. No. 64 at 4. No amount of the Settlement Fund will revert to Bisco. Agr. at p. 7 ¶ 9.

The amount of each cash payment is the claiming Settlement Class Member's *pro rata*

---

[1] Though, prior to *Campbell-Ewald*, the Seventh Circuit had overruled itself in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015), the common practice in this Circuit had been to file a skeletal class certification motion with the complaint in order to forestall defense attempts to moot the named plaintiff's individual claims (and thereby avoid class-wide liability) through an individual settlement offer or Rule 68 offer of judgment, as initially suggested in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011). After Bisco's initially successful effort at purporting to moot Fulton Dental's claims through a motion to deposit funds, other class defendants in this Circuit began to make similar demands, and the plaintiffs' bar again found itself having to file procedural "*Damasco* motions" to avoid clients' claims being prematurely mooted against their wishes and without any class-wide relief. This case has thus provided significant clarity to class action litigants in this Circuit.

share of the Settlement Fund after discounting the costs of notice and administration, attorneys' fees and costs, and any incentive award, and if uncashed checks permit a second *pro rata* distribution equal to or greater than $1.00 per qualifying claimant, the Settlement Class Administrator will make a second *pro rata* distribution to Settlement Class Members who cashed settlement checks. Agr. at p. 5 ¶ 4.c. Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed as *cy pres* to the National Consumer Law Center ("NCLC") or other charity approved by the Court. *Id.* at ¶ 4.c.v. Class notice has been effectuated through direct facsimile and the creation of a settlement website, through which Settlement Class Members can submit claims directly. Agr. at p. 7 ¶ 11.

## II.     SEVENTH CIRCUIT STANDARD FOR COMMON FUND FEE AWARDS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a

4

common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class; "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (quoting *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995)).

"The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the

5

parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit further clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

### III. ARGUMENT

#### A. Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 566 (7th Cir. 1994). Class Counsel and Plaintiff have created a $262,500 non-reversionary Settlement Fund that provides substantial, actual value to Settlement Class Members. Cash awards will be made directly to Settlement Class Members who submit valid claim forms. Class Counsel seek attorneys' fees of one-third of the Settlement Fund, or $87,500, plus out-of-pocket costs of $2,115.40. Given the result obtained for the class, and the fact that the requested fee award is set at the "market range," the requested fee award is presumptively reasonable. Further, the requested fee award of one-third of the total Settlement Fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in recent TCPA class cases considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

#### 1. Seventh Circuit Attorney Fee Analysis

"Reversionary" or "claims made" settlements, where the defendant takes back any amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit. Here, there is a dedicated, non-reversionary "true" lump-sum cash fund of $262,500. *Pearson*'s

discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference:

> But in [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id.* at 480 n.5. The class members [in *Boeing*] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id.* at 480-81. There is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, 772 F.3d at 782. This Settlement presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*, creating a $262,500, non-reversionary common settlement fund. In addition, each class member has "an undisputed and mathematically ascertainable claim" to their share of a lump-sum judgment.

Plaintiff recognizes that *Pearson* and *Redman* reversed district court rulings that included notice costs in their calculation of the "benefit" to the class for purposes of fees. However, neither of those cases were all-cash common fund cases like this one is, and the notice plan in both of those cases was found to have been wanting. Cost of notice was not properly included in the calculation of fees in *Pearson* because it was a reversionary settlement, which, according to the Seventh Circuit, incentivizes both plaintiffs' counsel and the defense to "chill" claims because "the fewer the claims, the more money [defendant] would be willing to give class counsel to induce settlement." *Id.* at 783. In a reversionary settlement, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims." *Id.* The notice plan in this case—i.e., direct notice by fax to all numbers in the class list, supplemented by a settlement website—presents no such issue because no money will revert to Defendant.

7

Similarly, the cost of the notice plan in *Redman* was excluded from the fee calculation because, in the context of a coupon settlement, the cost of notice represents a benefit to class counsel as well as to the class. Plaintiff's counsel here submit that here, where there is a concrete wholly-monetary benefit to the class and individual notice informs class members of a settlement check to which they have "an undisputed and mathematically ascertainable" right, the cost of notice is, in fact, a direct benefit to the class, and should be included in the Court's assessment of a reasonable fee. *Pearson* holds that "in consumer class actions, where the percentage of class members who file claims is often quite low … the presumption should[,] we suggest[,] be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at 782.

Even if this Court were to find the distinctions between this case and *Redman* and *Pearson* unpersuasive, Class Counsel's requested fee award satisfies the *Pearson* presumption of reasonableness: Class Counsel's requested fee award, $87,500, is approximately 41% of the total of requested attorneys' fees plus anticipated Settlement Class benefits—well under the 50% deemed presumptively reasonable under *Pearson*.[2]

Class Counsel submit that this fee request is reasonable, consistent with market rates, and should be approved. *See Charvat v. AEP Energy, Inc.*, No. 13-662 (N.D. Ill. Jan. 16, 2014) (Zagel, J.) (Dkt. No. 44) (awarding one-third of the total common fund, which was 40% of the common fund after deduction of administration expenses); *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. Feb. 15, 2015) (awarding 36% of the total common fund for fees for the first $10,000,000 of the settlement); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-

---

[2]    $87,500 Fee Award ÷ ($87,500 Fee Award + ($262,500 Settlement Fund - $43,720 Estimated Notice and Administration Costs - $87,500 Fee Award - $5,000 Incentive Award)) = roughly 0.4093

8

third of defendants' total payout for fees); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees).

### 2. *The risk associated with this litigation justifies the requested fee award of one-third of the common fund.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated"). As discussed below, Plaintiff's case involved substantial risk, making the one-third of the total settlement fund a reasonable fee sought.

### 3. *The quality of Class Counsel's performance, work invested, and stakes of the litigation further support the requested Fee Award.*

In addition to accepting considerable risk in litigating this action, Class Counsel also committed their time and resources to this case, without any guarantee of compensation, whatsoever.

Most apparent from the record is that Plaintiff *lost* this case, and had to prevail upon

9

appeal in order to proceed on the merits. Such circumstances illustrate only one of the possible pitfalls associated with contingent litigation. Class Counsel accepted at the outset of this litigation that records identifying the faxes at issue may not be available. Moreover, even assuming that sufficient discovery would be obtained, Class Counsel accepted the risk that the Court would ultimately deny certification. This is a very real concern, as, for example, courts are currently divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (finding issues of consent to predominate in TCPA action), *with Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (certifying a class in a TCPA action and finding no evidence supported view that issues of consent would be individualized).

Success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, and counsel, and would require significant expenditure of time, money, and resources – including expert expenses – for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

    **4.**   **The requested fee comports with the contract between Plaintiff and Class Counsel, and typical contingency fee agreements in this Circuit.**

In addition to analyzing the market price for legal services from analogous cases, the risk associated with a particular matter, and the quality of work of counsel, courts also may examine

"actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) ( finding 40% to be "the customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). The TCPA is not fee-shifting, so the attorney's fee model is more akin to personal injury matters than fee shifting cases such as those brought pursuant to Chapter 41 of Title 15 of the United States Code, such as the FDCPA, FCRA, or TILA.

Absence of fee shifting makes things very risky for counsel, especially where, as here, the named plaintiff's receipt of a single fax would, absent class-wide resolution, limit the total potential recovery to $500 or, at most, $1,500 at the court's discretion upon a finding of willfulness. 47 U.S.C. § 227(b)(3). And TCPA cases are important to American society: Without enforcement through civil class actions, fax machines and cell phones would be rendered useless because of the mountains of unsolicited spam faxes, robocalls, and texts we would receive. In any event, fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. Burke Decl. ¶ 13. This supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante.

11

B.     **The Incentive Award to the Class Representative Should Be Approved.**

Incentive awards compensating the named plaintiff for work done on behalf of a class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff worked with Class Counsel to investigate the case, was kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. Burke Decl. ¶ 15. Moreover, the amount requested here, $5,000, is less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, Dkt. No. 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement). The requested service award of $5,000 for Plaintiff is thus reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that, at the time of final approval, the Court grant the motion and award Class Counsel attorneys' fees of $87,500, plus costs of $2,115.40. Class Counsel further requests that the Court approve a $5,000 incentive award to the Class Representative.

                                                                Respectfully submitted,

Dated: January 9, 2018                                          FULTON DENTAL, LLC, individually,
                                                                and on behalf of all others similarly situated

                                                                By: _/s/ Alexander H. Burke_____

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Edward A. Broderick
Anthony I. Paronich
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327
ted@broderick-law.com
anthony@broderick-law.com

Matthew P. McCue
LAW OFFICE OF MATTHEW P. MCCUE
1 South Ave., 3rd Floor
Natick, MA 07160
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mmccue@massattorneys.net

J. Matthew Stephens
M<span>c</span>C<span>allum</span>, M<span>ethvin</span> & T<span>errell</span>, P.C.
2201 Arlington Ave. South
Birmingham, AL 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mmlaw.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that, on January 9, 2018, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                 /s/ Alexander H. Burke