**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FULTON DENTAL, LLC**
individually, and on behalf
of all others similarly situated,

   Plaintiff,

v.

**BISCO, INC.**

   Defendant.

Case No. 1:15-cv-11038

Hon. Judge Edmond E. Chang
Hon. Mag. Judge Daniel Martin

**<u>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

   Plaintiff Fulton Dental, LLC, individually and on behalf of a Settlement Class of

similarly situated persons, by and through class counsel, respectfully submits the following

Motion for Final Approval of Class Action Settlement with Defendant Bisco, Inc. ("Bisco").

This Court preliminarily approved the Agreement on November 9, 2017. Dkt. No. 64.

   The Settlement requires Defendant to pay $262,500 into a non-reversionary common

fund for the benefit of 25,127 class members whom Bisco faxed in alleged violation of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

   Reaction to the settlement has been excellent: there is a <u>7% claims rate</u>, <u>one opt out</u> and

<u>one objection</u>. As explained below, the Court should approve the ettlement *in toto*.

**I.**  **<u>THE NOTICE PROCESS</u>**

   Following the Court's Order preliminarily approving the settlement in this matter, notice

of the settlement was delivered successfully to 20,551 of the total 25,117 class members

identified. Specifically, notice of the Settlement was sent by a third-party administrator,

Kurtzman Carson Consultants ("KCC"), to class members in the following manner:

- On December 1, 2017, KCC caused the Fax Notice and Claim Form (collectively, the "Notice Packet") to be faxed to the 25,117 fax numbers in the Class List.

- KCC attempted to send the Notice Packet up to three times per fax number and Notice Packets to 4,566 of the fax numbers failed after three attempts.

- On December 1, 2017, KCC established a website, www.tcpabiscosettlement.com, which was established to provide information to the Class Members, answer frequently asked questions, and allow Class Members to submit a claim online.

- Visitors to the website were able to download copies of the Web Notice, the Notice Packet, and other case-related documents.

- The website had 940 visitors.

*See* Declaration of Andrew Perry, Exhibit 1 at ¶¶ 6-8. Though the 7% claims rate suggests that

the notice plan in this case was largely successful, neither Rule 23 nor due process requires

receipt of actual notice by all class members, and the Federal Judicial Center has suggested a

minimum 70% "reach" of class members.  Federal Judicial Center, *Judges' Class Action Notice*

*and Claims Process Checklist and Plain Language Guide* at 3 (2010) (*available at*

http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf). Here, the parties'

notice plan reached more than 81% of class members. *Id.*

There have been only one objection and only one exclusion. *Id.* at ¶ 9-10.

## II.    CLAIMS SUMMARY

The notice and claim process resulted in approximately 7% total of valid and timely-

submitted claim forms, which is consistent with the expected range of claims in TCPA cases. *See*

*Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly

unusual in consumer class actions and does not suggest unfairness."). If the settlement expenses,

incentive award and attorney's fees are approved as requested, the settlement administrator estimates that the claim payment would be about $67.00 to each class member. *Id.* at ¶ 13.

There were a number of claims submitted by entities that were not on the class list, a phenomenon that likely arose because certain media outlets ran stories about the settlement.[1] While the settlement arguably calls for a cure notice to be sent to these non-class members[2], the Plaintiff suggests that these claims simply be denied. Similarly, rather than spend the settlement resources on sending cure notices to individuals who are class members but filed claims with technical deficiencies (e.g. a lack of signature on the claim form), Plaintiff suggests that these claims be accepted. Defendant does not have any objection to either approach.

## III. BACKGROUND AND SETTLEMENT

Fulton Dental, LLC filed this action against Bisco on December 8, 2015, alleging that Bisco violated the Telephone Consumer Protection Act by sending unsolicited facsimile advertisements that did not contain a required opt-out notice to Plaintiff and others. *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4). Bisco filed its answer on January 12, 2016, and on January 25, 2016, in an effort to moot the case, it made an individual Fed. R. Civ. P. 68 offer of judgment to Plaintiff and moved to deposit such funds with the Court, requesting that judgment be granted in Plaintiff's favor on an individual basis, only. Dkt. Nos. 17, 21. Plaintiff rejected the offer, and Class Counsel briefed an opposition to this attempt by Bisco to force a "pick off" of the named plaintiff in order to avoid class-wide liability. Dkt. No. 25.

After the Court granted Bisco's motion to deposit funds and entered judgment in

---

[1] *See e.g. https://classactionwallet.com/262500-bisco-dental-products-junk-fax-class-action-settlement/* (Last Visited on February 16, 2018); https://topclassactions.com/lawsuit-settlements/closed-settlements/829274-bisco-fax-advertisements-class-action-settlement/ (Last Visited on February 16, 2018).

[2] *See* ECF No. 60-1 at ¶ 12.

Plaintiff's favor on an individual basis, Class Counsel filed a timely notice of appeal on September 29, 2016, Dkt. Nos. 36, 38-41, and engaged Public Citizen to argue the appeal. The parties thereafter engaged in appellate briefing and argument before the Seventh Circuit. *See Fulton Dental, LLC v. Bisco, Inc.*, No. 16-3574 (7th Cir.) (Dkt. Nos. 11-14, 17-18, 23-24). Plaintiff's efforts were successful: On June 20, 2017, the Seventh Circuit reversed the judgment and remanded for further proceedings; its opinion clarified the effect of unaccepted offers of judgment in this Circuit in light of the Supreme Court's holding in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), holding that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *See Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 546 (7th Cir. 2017) (reaffirming, post-*Campbell-Ewald*, that "as long as the proposed class representative has not lost on the merits before a class certification motion is filed, it is not barred from seeking class treatment"). It is because of this case that courts in this Circuit are no longer inundated with perfunctory class certification motions filed with the complaint in order to stave off named plaintiff "pick-off" attempts by defendants looking for a procedural loophole around class-wide liability.[3]

After these proceedings were remanded, the parties proceeded into extensive class and merits discovery, including Bisco's production of records of the faxes it sent during the class

---

[3]     Though, prior to *Campbell-Ewald*, the Seventh Circuit had overruled itself in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015), the common practice in this Circuit had been to file a skeletal class certification motion with the complaint in order to forestall defense attempts to moot the named plaintiff's individual claims (and thereby avoid class-wide liability) through an individual settlement offer or Rule 68 offer of judgment, as initially suggested in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011). After Bisco's initially successful effort at purporting to moot Fulton Dental's claims through a motion to deposit funds, other class defendants in this Circuit began to make similar demands, and the plaintiffs' bar again found itself having to file procedural "*Damasco* motions" to avoid clients' claims being prematurely mooted against their wishes and without any class-wide relief. This case has thus provided significant clarity to class action litigants in this Circuit.

period as well as documents to support Bisco's assertion that the facsimile advertisements were sent with the permission of the recipients. *See* Declaration of Alexander H. Burke, ECF No. 66-1**.** The parties also began to discuss the possibility of a class-wide settlement, and through the ensuing months counsel engaged in arm's-length negotiations, which ultimately led to the proposed Settlement now before the Court. *Id.* These negotiations were informed by Class Counsel's thorough investigation and discovery into Plaintiff and the class' claims. *Id.*

The Settlement requires Bisco to fund a non-reversionary, cash Settlement Fund of $262,500 for the benefit of a Settlement Class consisting of the 25,127 recipients to whom Bisco's fax log indicates it sent a facsimile between December 8, 2011 and December 8, 2015. Dkt. No. 60-1 ("Agr.") at p. 2 ¶ 4, p. 4 ¶ 4.a.   Each Settlement Class Member who submits a simple claim form online, by facsimile, or by mail will receive a cash payment. Agr. at p. 5 ¶ 4.c; Dkt. No. 64 at 4.  No amount of the Settlement Fund will revert to Bisco. Agr. at p. 7 ¶ 9.

The amount of each cash payment is the claiming Settlement Class Member's *pro rata* share of the Settlement Fund after discounting the costs of notice and administration, attorneys' fees and costs, and any incentive award, and if uncashed checks permit a second *pro rata* distribution equal to or greater than $1.00 per qualifying claimant, the Settlement Class Administrator will make a second *pro rata* distribution to Settlement Class Members who cashed settlement checks.  Agr. at p. 5 ¶ 4.c.  Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed as *cy pres* to the National Consumer Law Center ("NCLC") or other charity approved by the Court.  *Id.* at ¶ 4.c.v. Class notice has been effectuated through direct facsimile and the creation of a settlement website, through which Settlement Class Members can submit claims directly. Agr. at p. 7 ¶ 11.

## IV.   <u>ONLY ONE OBJECTION WAS RECEIVED</u>

While not filed with the Court, the settlement administrator did receive a single objection from a class member, which is attached to the administrator's affidavit. The objection of Alpine Dental Clinic claims that the settlement is a product of "our mis-guided [sic] justice system" because "jurys tend to pay little attention to right or wrong…and to reward something for something that is insignificant." Alpine Dental asserts that the settlement should only be for "$5.00 or less to the claimants, which would more than cover their actual costs". However, Alpine Dental's position would grant *less* relief to the class than is anticipated under the settlement, and it summarily disregards the fact that the TCPA provides for statutory damages of $500.00. *See* 47 U.S.C. § 227(b)(3). The parties assessed their various risks and agreed on a settlement amount that was less than a complete victory for the Plaintiff but considered the statutory damages instead of the potential claimant's actual costs. Alpine Dental also mistakenly asserts that the settlement was only achieved "once the Court allowed Broderick & Paronich, P.C. to make this a class action suit" and implies that the Defendant only settled because it had no choice. However, as described above, the settlement was reached following discovery and the Seventh Circuit Court of Appeals decision, but not following an adverse decision on class certification. In other words, Bisco was not under any undue pressure that forced it to settle.

There was also only a single exclusion requested. This number should be viewed as an endorsement of the Agreement by the Settlement Class. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (finding "the amount of opposition to settlement among affected parties" to be a relevant factor in assessing appropriateness of proposed class settlement).

6

## V.      NO GOVERNMENT ENTITIES HAVE OBJECTED TO THE SETTLEMENT.

In accordance with this Court's Preliminary Approval Order and the Class Action

Fairness Act, notice was sent of the proposed settlement to the Attorney General of the United

States as well as the Attorney General of each state in which Class Members reside. *See* Exhibit

1 at ¶2-4. Neither Plaintiff's counsel nor counsel for Defendant have received any objections

from these government officials, nor have any officials sought to intervene in this action.

## VI.     THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF FRCP 23.

For settlement purposes only, the parties have stipulated to the following class:

> All persons or entities within the United States to whom Bisco, Inc.
> or Bisco Dental Products Co. sent a facsimile at any time from
> December 8, 2011 through December 8, 2015, and who are
> identified by their fax in Bisco's fax log Bates numbered B00020-
> 1307.

The Defendant's records reveal that there are 25,127 class members, and as explained below,

these individuals meet the requirement of Fed. R. Civ. P. 23. Federal Rule of Civil Procedure

23(a) makes class certification appropriate in cases where:

> (1)  The class is so numerous that joinder of all members is
>      impracticable,
>
> (2) There are questions of fact or law common to the class,
>
> (3) The claims or defenses of the representative parties are typical of the
>      claims defenses of the class, and
>
> (4) The representative parties will fairly and adequately protect the interest of
>      the class.

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if

the above prerequisites have been met and:

> the court finds that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual members, and
> that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy.

**A.**  **Rule 23(a)(1)  --  Numerosity.**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 40. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members). In the present case, the Settlement Class consists of persons or entities with 25,127 unique fax numbers. This plainly satisfies the numerosity requirement.

**B.**  **Rule 23(a)(2) -- Commonality; and Rule 23(b)(3) -- Common Questions of Law or Fact Predominate.**

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. Among these common questions are whether Defendant sent or caused to be sent the facsimiles at issue, whether the facsimiles at issue were required to have an opt-out notice under the TCPA, whether the facsimiles violated the TCPA,

and whether Plaintiff and the Settlement Class Members were injured by any violation of the TCPA. As a result, several courts have certified class actions under the TCPA. *Holtzman v. Turza*, 08-2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), *aff'd in relevant part*, 728 F.3d 682 (7th Cir. 2013); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07-5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); *Sadowski v. Med1 Online, LLC*, No. 07-2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008).

**C.**     **Rule 23(a)(3) – Typicality.**

Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). In the instant case, typicality is inherent in the class definition. By definition, each of the Settlement Class Members has been subjected to the same practice as the named Plaintiff: namely, they are persons and entities with facsimile numbers that, during the class period, were sent faxes by or on behalf of Defendant.

**D.**     **Rule 23(a)(4) -- Adequacy of Representation.**

The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff will fairly and adequately protect the

9

interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Counsel's qualifications are set forth in previously submitted declarations. *See* ECF No. 60-2. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

### E.   Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy.

A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."  *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976). In the TCPA context, class actions like this one provide "the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

## VII.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the United States Supreme Court explained that, before approving a class action settlement, a court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corp. v. Lease*

*Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court should weigh the following

six factors in making this determination:

1.      The strength of the plaintiff's case on the merits measured against
        the terms of the settlement;
2.      The complexity, length, and expense of continued litigation;
3.      The amount of opposition to the settlement among class members;
4.      The presence of collusion in gaining a settlement;
5.      The stage of the proceedings; and
6.      The amount of discovery completed.

*Id*. (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).

The proposed class settlement in this case satisfies each of the factors outlined in *GE*

*Capital*. Plaintiff believes that it had a strong chance of prevailing if this case had gone to trial.

Defendant disputes Plaintiff's claims and believe it has strong defenses to Plaintiff's claims and

to class certification. In an effort to avoid the uncertainty and expenses presented by further

litigation, the parties have agreed to settle the dispute between them, subject to the Court's

approval. The arguable strength of the Class's claims compare favorably to the terms of the

proposed Settlement, as more fully set forth above, satisfying the first of the *GE Capital* factors.

In addition, the proposed Settlement is warranted by the complexity, length, uncertainty

and expense of continued litigation, satisfying the second *GE Capital* factor. The proposed

Settlement easily satisfies the third *GE Capital* factor because only one of the Settlement Class

Members have elected to exclude themselves from the proposed Settlement and one Class

Member has objected to the proposed Settlement. There is no evidence of any collusion among

the parties in reaching the proposed Settlement. To the contrary, the above-described payment

amounts to Plaintiff and Class Counsel compare favorably to the direct benefits to the Settlement

Class, thereby satisfying the fourth *GE Capital* factor.

Each Settlement Class Member who submitted a valid claim will receive a recovery of approximately $67.00, which falls well within the acceptable and previously approved range of TCPA settlements in this district and elsewhere. *See e.g. Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248 (S.D. Cal.) ($1.60 per class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198 (W.D. Wash.) ($3.10 per class member); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.) ($3.85 per class member); *Couser v. Comenity Bank*, No. 12-cv-2484 (S.D. Cal.) ($2.13 per class member); *Franklin v. Wells Fargo Bank*, No. 14-cv-2349 (S.D. Cal.) ($3.78 per class member); *Kazemi v. Payless ShoeSource, Inc.*, No. 3:09-cv-05143 (N.D. Cal.) ($1.18 per class member); *Kramer v. Autobytel, Inc.*, No. 4:10-cv-02722 (N.D. Cal.) ($0.26 per class member); *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392 (W.D. Wash.) ($3.50 per class member); *Malta v. Freddie Mac & Wells Fargo Home Mtg.*, No. 3:10-cv-01290 (S.D. Cal.) ($3.94 per class member); *Sarabri v. Weltman, Weinberg & Reis Co.*, L.P.A. No. 3:10-cv-01777-AJB-NLS (S.D. Cal.) ($0.85 per class member); *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118-JSW (N.D. Cal.) ($1.45 per class member); *Rose v. Bank of Am.*, No. 5:12-cv-4009-EJD (N.D. Cal. $4.15 per class member); *Abramson v. Alpha Gas & Elec., LLC*, No. 15-cv-05299-KMK (S.D.N.Y.) ($4.37 per class member); *Addison Automatics, Inc. v. Precision Electronic Class, Inc.*, No. 1:10-cv-06903 (N.D. Ill.) ($2.68 per class member); *Gehrich v. Chase Bank USA*, No. 1:12-cv-5510 (N.D. Ill.) ($2.13 per class member); *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.) ($1.20 per class member).

Finally, the fifth and sixth *GE Capital* factors also support the final approval of the proposed Settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties litigated protracted motion practice, including an appeal, engaged in substantive class discovery and engaged in heated arms-length negotiations before resolving this case. Given

the stage of proceedings, the investigation and the discovery completed, the proposed Settlement satisfies the fifth and sixth *GE Capital* factors.

## VIII. THE REQUESTED ATTORNEYS' FEES AND SERVICE AWARD ARE REASONABLE.

As directed by this Court, Plaintiff's counsel filed a dedicated fee brief prior to the objection deadline, which also specified that Plaintiff seeks $5,000 as a class representative service award. *See* ECF No. 66. This brief was publicly available on the settlement website.

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's effort result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating the fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691

(7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit."). For these reasons, and those explained in class counsel's dedicated fee brief, the requested fees are reasonable.

## IX. CONCLUSION

For all of the reasons set forth above, Plaintiff individually, and as a representative of the Settlement Class of similarly situated persons, by Class Counsel, requests that this Court grant final approval of the Agreement and enter the parties' proposed final approval order, attached hereto as Exhibit 2.

Respectfully submitted,

Dated: February 21, 2018                    FULTON DENTAL, LLC, individually,
                                            and on behalf of all others similarly situated

                                            By: /s/ Anthony I. Paronich

Edward A. Broderick
Anthony I. Paronich
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327
ted@broderick-law.com
anthony@broderick-law.com

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Matthew P. McCue
LAW OFFICE OF MATTHEW P. MCCUE

1 South Ave., 3rd Floor
Natick, MA 07160
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mmccue@massattorneys.net

J. Matthew Stephens
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Ave. South
Birmingham, AL 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mmlaw.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 21, 2018, I caused the foregoing to be electronically

filed with the Clerk of the United States District Court for the Northern District of Illinois using

the CM/ECF system, which will send notification of such filing to all counsel of record.


　　　　　　　　　　　　 */s/ Anthony I. Paronich*